This is an appeal from the denials of two petitions for post-conviction relief.
In 1983, Tommy Floyd was convicted of capital murder and was sentenced to death. That conviction and sentence were ultimately affirmed on appeal. Floyd v. State, 486 So.2d 1309
(Ala.Cr.App. 1984), aff'd, 486 So.2d 1321 (Ala. 1986), cert.denied, 479 U.S. 1101, 107 S.Ct. 1328, 94 L.Ed.2d 179 (1987).
In 1987, Floyd filed a petition for post-conviction relief under Rule 20, A.R.Crim.P.Temp. ("the 1987 Rule 20 petition"). After an evidentiary hearing, the petition was denied. In 1988, Floyd filed another petition for post-conviction relief under Rule 20, which was also denied ("the 1988 Rule 20 petition"). The two appeals from the denials of these petitions were consolidated for purposes of writing an opinion.
 I
Appellant first contends that his constitutional rights under either Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712,90 L.Ed.2d 69 (1986), or Swain v. Alabama, 380 U.S. 202,85 S.Ct. 824, 13 L.Ed.2d 759 (1965), were violated because the prosecution used its peremptory jury strikes in a racially discriminatory manner.
Our review of the history of this case reveals that Floyd was tried in January 1983. He was represented at trial by Attorney Wayne Collier. Following the selection of the jury, an incamera hearing was conducted, at which time defense counsel moved for a mistrial and asked that a new jury be impaneled on the grounds "that the pattern of strikes by the District Attorney was, in fact, a systematic exclusion of all blacks from the jury." Evidence was then presented that the State used its first 11 strikes to remove the 11 black members of the jury venire. Next, defense counsel questioned the district attorney as to his reasons for striking the black jurors. In response to defense counsel's questioning, the district attorney stated simply that he tried "to strike those who in my professional opinion I felt like would tend to acquit rather than convict." He went on to state that, "[i]f there had been one of the eleven which I struck, in my professional opinion, had I felt like they would tend to convict rather than to acquit, I would not have struck them regardless of race, color, creed or otherwise." Thereafter, defense counsel's mistrial motion was denied and the trial commenced.
Floyd was found guilty of capital murder by the jury. As part of his strategy to prevent Floyd from being sentenced to death, defense counsel elected to waive a punishment hearing before the jury. Nonetheless, appellant was sentenced to death by the trial judge.
Floyd appealed his conviction and sentence. On appeal, Floyd was represented by Attorney Mark Anderson. On March 24, 1984, Floyd's case was remanded to the circuit court with directions that a new sentencing hearing be held. Floyd,486 So.2d at 1315. This Court affirmed Floyd's conviction and sentence on May 14, 1985. This Court's decision was affirmed by our Supreme Court on January 10, 1986. Ex parte Floyd, 486 So.2d 1321
(Ala. 1986). At no time during this period had the issue of the systematic exclusion of blacks from appellant's jury been raised before this Court or our Supreme Court.
Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712,90 L.Ed.2d 69 (1986), was decided on April 30, 1986. In June 1986, the United States Supreme Court determined *Page 1223 
"that our decision in Batson should not be applied retroactively on collateral review of convictions that became final before our opinion was announced." Allen v. Hardy,478 U.S. 255, 106 S.Ct. 2878, 2880, 92 L.Ed.2d 199 (1986). In December 1986, our Supreme Court held that the rule of Batsonv. Kentucky was to be given retroactive application. Ex parteJackson, 516 So.2d 768, 770-772 (Ala. 1986). The United States Supreme Court, likewise, determined in January 1987 that the rule of Batson v. Kentucky was to be applied retroactively to all cases, state or federal, pending on direct review, or not yet final. Griffith v. Kentucky, 479 U.S. 314, 107 S.Ct. 708,716, 93 L.Ed.2d 649 (1987). "By 'final,' we mean a case in which a judgment of conviction has been rendered, the availability of appeal exhausted, and the time for a petition for certiorari elapsed or a petition for certiorari finally denied." Griffith, 479 U.S. at 321 n. 6, 107 S.Ct. at 712, n 6. On February 23, 1987, the United States Supreme Court denied certiorari in Floyd's case. In his petition to that Court for certiorari, Floyd, for the first time on appeal, raised the issue of systematic exclusion of blacks from his jury.
Floyd's 1987 Rule 20 petition contained six grounds for relief. One contended that his trial counsel was ineffective because of the way in which he objected to the State's use of its peremptory jury challenges. This ground further contended that his appellate counsel was ineffective for failing to raise this same issue at the appellate level. This indirect reference to what has since come to be known as the Batson issue was the only mention of this issue in Floyd's 1987 Rule 20 petition. However, in an amendment to that petition, Floyd, for the first time in a state court, contended that his constitutional rights had been violated by the State's use of its peremptory juror challenges to systematically exclude blacks from his jury. An evidentiary hearing on appellant's 1987 Rule 20 petition was conducted, and on March 21, 1988, the circuit judge entered a written order denying the petition. With regard to the Batson
issue, the judge simply stated:
 "Petitioner's fifth claim, contained in paragraph 2 of the amendment to the petition, concerning the prosecution's peremptory jury strikes, is precluded from review by Temporary Rule 20.2(a)(5) of the Alabama Rules of Criminal Procedure because it was raised at trial and could have been but was not raised on direct appeal."
Floyd's 1988 Rule 20 petition again raised theBatson issue. The circuit judge dismissed this petition because it found "that this petition is a successive one based on same or similar grounds as a Temporary Rule 20 petition [the 1987 Rule 20 petition] filed by this same petitioner which was heard and denied by this Court on March 21, 1988."
Appellant argues that the prosecution's actions entitle him to a new trial. The State, however, contends that because appellant failed to raise this issue on direct appeal to the appellate courts of this State, he is procedurally barred from pursuing this issue on collateral appeal. We agree.
This issue was recently addressed by this Court inCochran v. State, 548 So.2d 1062 (Ala. 1989). In Cochran, Judge Bowen, writing for the Court, held as follows:
 "Under the circumstances present, [appellant] is procedurally barred from relief on his claim that the State actually used its peremptory challenges in a racially discriminatory manner in violation of Batson, supra. As we have observed, that issue could have been raised on direct appeal. 'A petitioner will not be given relief under . . . [Rule 20] based upon any ground which could have been but was not raised on appeal.' Rule 20.2(a)(5), A.R.Cr.P.Temp. See also Bell v. State, 535 So.2d 210 (Ala. 1988).
 "Relying principally on Reed v. Ross, 468 U.S. 1, 104 S.Ct. 2901, 82 L.Ed.2d 1 (1984), [appellant] argues that he is not procedurally barred from raising the Batson issue because the Batson
argument was a 'novel' issue. Reed held:
 " 'When a procedural default bars litigation of a constitutional claim in state court, a state prisoner may not obtain federal habeas corpus relief absent a *Page 1224 
showing of "cause and actual prejudice." '
"* * * *
 " '[W]e hold that where a constitutional claim is so novel that its legal basis is not reasonably available to counsel, a defendant has cause for his failure to raise the claim in accordance with applicable state procedures.' Reed, 468 U.S. at 11, 16, 104 S.Ct. at 2908, 2910.
 " '[C]ounsel's failure to raise a particular claim or claims on appeal is to be scrutinized under the cause and prejudice standard when that failure is treated as a procedural default by the state courts.' Murray v. Carrier, 477 U.S. 478 [492], 106 S.Ct. 2639, 2648, 91 L.Ed.2d 397 (1986).
 " 'Attorney error short of ineffective assistance of counsel does not constitute cause for a procedural default even when that default occurs on appeal rather than at trial. To the contrary, cause for a procedural default on appeal ordinarily requires a showing of some external impediment preventing counsel from constructing or raising the claim.' Carrier, 477 U.S. at [492], 106 S.Ct. at 2648.
 "While the 'novelty' of an issue may constitute cause for the failure to raise that issue on appeal, the cause and prejudice test for excusing compliance with a State's contemporaneous-objection rule at trial, Wainwright v. Sykes, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977), and on appeal, Reed, supra, is a federal rule involving federal review on federal habeas corpus. Rule 20, A.R.Cr.P.Temp., contains no similar rule excusing the failure to raise an issue at trial or on appeal.
 " 'A federal habeas corpus court will not address an issue if the petitioner may not pursue that issue in state court because of a procedural default unless he can overcome this impediment by showing cause for and actual prejudice from the default. Engle v. Isaac, 456 U.S. 107, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982); Wainwright v. Sykes, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977). Alabama has contemporaneous objection rules that preclude appellate review of issues that could have been raised at trial. Wood v. State, 416 So.2d 794
(Ala.Crim.App. 1982); Moore v. State, 415 So.2d 1210 (Ala.Crim.App.), cert. denied, 459 U.S. 1041, 103 S.Ct. 459, 74 L.Ed.2d 610 (1982); Fagan v. State, 412 So.2d 1282 (Ala.Crim.App. 1982), and coram nobis review of issues that could have been raised on direct appeal; Dobard v. State, 455 So.2d 281 (Ala.Crim.App. 1984); Magwood v. State, 449 So.2d 1267 (Ala.Crim.App.), late appeal denied, 453 So.2d 1349 (Ala. 1984).' Magwood v. Smith, 791 F.2d 1438, 1444 (11th Cir. 1986).
 "Issues raised at trial but not on direct appeal are barred from consideration in post-conviction proceedings. Dobard v. State, 455 So.2d 281, 283
(Ala.Cr.App. 1984). '[I]ssues raised in the petition are not cognizable in a coram nobis proceeding, because they were either dealt with on direct appeal or could have been raised at trial or on direct appeal and were not.' Ex parte Clisby, 501 So.2d 483, 484 (Ala. 1986). Except in cases in which the death penalty has been imposed and the error is 'plain,' Rules 39(k) and 45A, A.R.A.P., a contemporaneous objection is required in order to preserve error for review on direct appeal. Biddie v. State, 516 So.2d 846 (Ala. 1987)."
Although Floyd has been sentenced to death, we find that the alleged error in this case is not "plain." The record shows that the prosecutor used his peremptory challenges to remove jurors whom he felt would be reluctant to return a guilty verdict. He denied striking any of the black jurors because of their race and stated that if he had believed that any of these jurors "would tend to convict rather than to acquit, I would not have struck them regardless of race, color, creed or otherwise." Moreover, race-neutral reasons for removal of these jurors such as age, criminal record, or other involvement with the district attorney's office, acquaintance with the accused, or relationship to a convicted *Page 1225 
felon were subsequently given. Based on these facts we find no plain error, and, thus, we cannot conclude that the State engaged in racial discrimination in the selection of appellant's jury.
Appellant Floyd also raised this issue in his 1988 Rule 20 petition. That petition was dismissed by the trial court as a successive petition. Rule 20.2(b) provides as follows:
 "(b) SUCCESSIVE PETITIONS. The court shall not grant relief on a second or successive petition on the same or similar grounds on behalf of the same petitioner. A second or successive petition on different grounds shall be denied unless the petitioner shows both that good cause exists why the new ground or grounds were not known or could not have been ascertained through reasonable diligence when the first petition was heard, and that failure to entertain the petition will result in a miscarriage of justice."
Therefore, the trial court's dismissal of the 1988 Rule 20 petition was correct.
 II
Floyd's 1987 Rule 20 petition contains four other claims which are being raised for the first time. With regard to these claims, the circuit court found as follows:
 "Four of the claims raised in the petition are precluded from review by Temporary Rule 20.2(a)(3) and (5) of the Alabama Rules of Criminal Procedure because each could have been but was not raised at trial and on direct appeal. These claims are:
 "Claim Two — Constitutionality of Petitioner's Death Sentence Under the United States Constitution, paragraph 12(C)(1) of the petition.
 "Claim Three — Constitutionality of Petitioner's Death Sentence Under the Alabama Constitution, paragraph 12(C)(2) of the petition.
 "Claim Four — Proof of Requisite Intent, paragraph 12(C)(3) of the petition.
 "Claim Six — Element of Offense As aggravating Circumstance, paragraph 12(A)(3) of the Motion to Further Amend."
For the reasons discussed in Part I, the trial court correctly ruled that these claims are procedurally barred. Therefore, appellant cannot now raise these issues as grounds for relief. We would further note that the claims found in paragraphs 12(C)(1) and 12(C)(2) of appellant's 1987 Rule 20 petition lack sufficient specificity to meet the pleading requirements contained in Rule 20.6(b), A.R.Crim.P. Thus, the allegations in the 1987 Rule 20 petition are insufficient to raise the specific claims argued on appeal.
 III
The final claim in appellant's 1987 Rule 20 petition to be addressed is his claim of ineffective assistance of counsel both at trial and on appeal.
The legal standard to be used in determining ineffective assistance of counsel claims is found in Strickland v.Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674
(1984), which sets out two components to an ineffective assistance of counsel claim:
 "A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable."
466 U.S. at 687, 104 S.Ct. at 2064.
As to the first prong of an ineffective assistance claim, the United States Supreme *Page 1226 
Court has held that the correct standard for attorney performance is an objective one, that is, "reasonableness under prevailing professional norms." 466 U.S. at 688, 104 S.Ct. at 2065. The Court went on to hold that "the performance inquiry must be whether counsel's assistance was reasonable considering all the circumstances." Id. Once a petitioner has identified the specific acts or omissions which he alleges were not the result of reasonable professional judgment, the court must determine whether those acts or omissions are "outside the wide range of professionally competent assistance." 466 U.S. at 690, 104 S.Ct. at 2066. In making this determination, "the court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." Id.
Even when an attorney's performance is found to be deficient, the petitioner's conviction is not to be set aside unless the petitioner is able to affirmatively establish prejudice. "The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." 466 U.S. at 694, 104 S.Ct. at 2068. More specifically, the United States Supreme Court, per Justice O'Connor, stated as follows:
 "When a defendant challenges a conviction, the question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt. When a defendant challenges a death sentence such as the one at issue in this case, the question is whether there is a reasonable probability that, absent the errors, the sentencer — including an appellate court, to the extent it independently reweighs the evidence — would have concluded that the balance of aggravating and mitigating circumstances did not warrant death.
 "In making this determination, a court hearing an ineffectiveness claim must consider the totality of the evidence before the judge or jury."
466 U.S. at 695, 104 S.Ct. at 20.
Having set out the legal standard to be applied in this case, we now turn to Floyd's specific allegations against first, his trial counsel, and then, his appellate counsel.
Appellant contends that his trial counsel rendered ineffective assistance of counsel by failing to raise a specific 14th Amendment objection to the State's use of its peremptory strikes against black prospective jurors.
As to this claim, the circuit judge found as follows:
 "Petitioner's first allegation of ineffective assistance is that his trial lawyer failed to object to the prosecution's racially discriminatory peremptory strikes of black prospective jurors. This allegation is contradicted by the trial transcript which shows that Collier sought a mistrial after the jury was selected based on the alleged systematic exclusion of black prospective jurors. Petitioner's first allegation of ineffective assistance is without merit."
The circuit judge's ruling was clearly correct. An examination of the trial transcript reveals that Floyd's attorney, more than three years prior to the decision inBatson, supra, was announced, raised an objection to the State's use of its peremptory strikes against black prospective jurors. Thus, appellant's trial counsel's performance was not deficient, and Floyd was not prejudiced in any way, since his attorney did, in fact, raise the claim which appellant now says should have been raised.
Moreover, an attorney who did not raise a Batson objection at a pre-Batson trial can not be said to have been ineffective.Poole v. United States, 832 F.2d 561, 565 (11th Cir. 1987),cert. denied, 488 U.S. 817, 109 S.Ct. 54, 102 L.Ed.2d 33
(1988). The Court of Appeals for the Eleventh Circuit has also held that "[r]easonably effective representation cannot and does not include a requirement to make arguments based on how the law may develop." Elledge v. Dugger, 823 F.2d 1439, 1443
(11th *Page 1227 
Cir.), modified on other grounds, 833 F.2d 250 (11th Cir. 1987),cert. denied, 485 U.S. 1014, 108 S.Ct. 1487, 99 L.Ed.2d 715
(1988).
Appellant next argues that his trial counsel was ineffective because counsel waived closing argument at the guilt stage of appellant's trial.
As to this claim, the circuit judge found the following:
 "Petitioner's second allegation of ineffective assistance is that his trial lawyer waived closing argument at the guilt stage. Collier did waive his closing argument pursuant to a strategic decision.
 "Collier based his decision to waive closing argument on two factors. First, Collier had no strong arguments available to dissuade the jury from convicting his client or to persuade them to find petitioner guilty of a lesser offense. Second, the prosecution's initial closing argument was very brief and it appeared that the prosecution was saving its persuasive argument for last. Collier thought the potential harm to his client from the prosecution's second closing argument outweighed any benefit to be obtained from Collier's argument. Collier had made the same decision in other cases with some success."
The testimony of Floyd's trial counsel established that he made a strategic decision to forgo his closing argument in order to deprive the prosecution of its main opportunity to argue its case to the jury. The uncontradicted testimony of trial counsel was that the prosecutor's initial closing argument had been quite brief and had consisted of little more than a reading of the indictment. In light of this, Floyd's trial counsel decided that because he had no persuasive arguments, his client's interest could best be served by denying the prosecution, who had the burden of proof, of its chance to argue how that burden had been met. This is exactly the sort of strategic decision which the United States Supreme Court has held to be virtually unchallengeable inStrickland v. Washington. 466 U.S. at 690, 104 S.Ct. at 2065. Furthermore, Floyd did not even suggest a manner in which his trial counsel could have argued in closing that would have affected the outcome of his trial. Thus, Floyd has failed to establish a reasonable probability that, but for his lawyer's waiving his guilt-stage closing argument, the outcome of his trial would have been different. Therefore, the circuit court's findings were correct.
Moreover, the case of King v. Strickland, 714 F.2d 1481, 1491
(11th Cir. 1983), vacated and remanded, 467 U.S. 1211,104 S.Ct. 2651, 81 L.Ed.2d 358 (1984), on remand, 748 F.2d 1426 (11th Cir. 1984), cert. denied, 471 U.S. 1016, 105 S.Ct. 2020,85 L.Ed.2d 301 (1985), upon which Floyd relies, can be factually distinguished from the case at bar. In King, trial counsel was held to be ineffective because his closing argument actively harmed his client by underscoring the horror of the crime. Trial counsel also took pains during closing argument to emphasize that he had been appointed to represent his client. Here, Floyd's trial counsel did not argue to his client's detriment, but, rather, prevented the prosecution from arguing to his client's detriment.
Floyd also contends that his trial counsel was ineffective because Floyd, on his counsel's advice, waived a punishment-stage jury.
As to this claim, the circuit court found:
 "Petitioner's third allegation of ineffective assistance is that his trial lawyer waived a punishment stage hearing before a jury. As the trial transcript clearly shows, pursuant to Code of Alabama 1975, § 13A-5-44(c), petitioner, after being advised by Collier, waived a punishment hearing before a jury. Petitioner was advised of all that he was giving up and made a voluntary waiver of a punishment stage jury.
 "Collier advised petitioner to waive a punishment stage jury because, after a thorough investigation, he had no meaningful mitigation to present to a jury. By waiving a punishment stage jury, Collier avoided a jury recommendation of death, which must be considered by the court in weighing aggravation and mitigation. *Page 1228 Code of Alabama 1975, § 13A-5-47(e). Collier formulated a strategy to develop mitigation by having petitioner testify against his co-defendants and petitioner agreed to testify. Petitioner did testify for the prosecution at the trials of his co-defendants, Samuel Felder and Gregory Acres. At sentencing, on remand from the Court of Criminal Appeals, petitioner's testimony against his co-defendants was found to be a mitigating circumstance. Collier's decision to advise petitioner to waive a punishment stage jury and to testify against his co-defendants before sentencing was a reasonable strategic decision.
 "Petitioner failed to establish that he was prejudiced by waiving a punishment stage jury. At the evidentiary hearing, petitioner presented only his own uncorroborated testimony to show what mitigation could have been presented to a punishment stage jury. Petitioner testified that his father was an alcoholic, that his father had struck him and others in his family, that he and his father, on one occasion, had each fired a shot at the other, that he had used drugs, and that in 1970 he had a seizure caused by drugs he had taken. Petitioner also testified that neither of his lawyers ever asked him about his background.
 "Petitioner's testimony, especially that his lawyers never asked about his background, is contradicted by that of Collier. To the extent that there is a conflict, Collier's testimony is credible and petitioner's is not. Given petitioner's obvious motive to misrepresent his contact with his lawyers, the conflict in testimony, and his demeanor, petitioner is not a credible witness. Petitioner's credibility is further diminished by the fact that he did not mention any of these purported events, except his claimed drug use, to the probation and parole officer who prepared the presentence report in his case. Absent credible mitigating evidence, petitioner failed to establish a reasonable probability that, but for waiving a punishment stage jury, he would have been sentenced to life without parole.
 "Further, even accepting petitioner's testimony as true, the testimony he submitted at the evidentiary hearing does not excuse or explain petitioner's crime or create sympathy for him. Even considered as mitigation, it is far from compelling and there is no reasonable probability that a jury would have recommended a sentence of life without parole based on such evidence. Additionally, there is no reasonable probability that the trial court, which actually sentences, Code of Alabama 1975, § 13A-5-47, would have found that such evidence outweighed the three aggravating circumstances present in petitioner's case."
Based on the circumstances, Floyd's attorney was not ineffective in advising his client to waive a punishment-stage jury hearing, since this recommendation was made pursuant to his sentencing strategy; that is, to have Floyd testify against his co-defendants. This decision was not unreasonable where counsel had conducted an investigation seeking possible mitigating circumstances, but had found no mitigation that he thought would aid his client. Appellant's trial counsel basically seized an opportunity to create mitigation where none existed, and, thus, to increase his client's chances of avoiding the death sentence. Again, this strategic decision was sound, and on review it is virtually unchallengeable.Strickland v. Washington, supra, 466 U.S. at 690, 104 S.Ct. at 2065.
These facts, therefore, are distinguishable from those inBlake v. Kemp, 758 F.2d 523 (11th Cir.), cert. denied,474 U.S. 998, 106 S.Ct. 374, 88 L.Ed.2d 367 (1985), a case relied upon by Floyd. In Blake, the attorney failed to prepare for sentencing because he expected a not guilty by reason of insanity verdict at the guilt stage. 758 F.2d at 533. Here, Floyd's trial counsel testified that he had sought evidence of mitigating circumstances from his client, his client's family, and members of the community in which his client lived. Moreover, the decision to waive a punishment-stage jury hearing was the result of trial counsel's attempt to establish mitigation in the form of Floyd's cooperation with the authorities against his co-defendants. *Page 1229 
Thus, trial counsel here was doing what the Eleventh Circuit held that the attorney in Blake should have done, namely, developing mitigating evidence for use in sentencing.
Floyd not only has failed to show that his trial counsel's performance was deficient, but he also has failed to prove that he was prejudiced by waiving a punishment-stage jury hearing. Floyd's uncorroborated claims of childhood abuse and his voluntary drug abuse are far from compelling mitigating evidence. In a case such as this, where there were three aggravating circumstances, Floyd's testimony, even if believed, does not create a reasonable probability that, but for his waiving a punishment-stage jury hearing, he would not have been sentenced to death. This is especially true where the circuit judge below, who was also the sentencing judge, found Floyd not to be credible and found his testimony not to be persuasive mitigation, even if true.
Floyd further contends that his trial counsel was ineffective by not seeking an independent psychiatric examination of, or requesting psychiatric assistance for, Floyd at trial.
With regard to this claim, the circuit court found the following:
 "Collier also examined petitioner's prison records. He learned that, according to test results, petitioner had been found to be sane. Petitioner was reported to have an IQ in the low sixties that was due to his lack of education rather than an inability to learn. Because petitioner had not been out of prison for long before committing the charged offense, Collier examined these prison records to see if there was anything upon which to base an insanity defense. Collier never found any basis for an insanity defense.
 "Collier did not consider anything about petitioner's mental condition to be mitigating. Collier found petitioner to be very 'street smart' and described petitioner as 'the smartest sixty IQ person I think I have ever run into.'
 "Petitioner told Collier that he used drugs and claimed that the reason for the robbery/murder of Mr. Jackson was to obtain money for drugs. Petitioner claimed to inject drugs but Collier was, after physically examining petitioner, unable to find any physical evidence of drug abuse. Petitioner, according to his family, was a regular marijuana abuser and took pills but did not inject drugs. Collier did not consider petitioner's voluntary drug use to be a mitigating circumstance and thought it would hurt more than help at trial."
The record below established that trial counsel investigated his client's mental condition. Based on his investigation and his dealings with Floyd, he determined that there was no basis in fact for an insanity defense and consequently focused on other defenses. This decision does not evidence deficient performance. Failure to present psychiatric evidence in mitigation does not necessarily constitute ineffective assistance of counsel. Hitchcock v. Wainwright, 745 F.2d 1332,1338 (11th Cir. 1984) rev'd on other grounds, 481 U.S. 393,107 S.Ct. 1821, 95 L.Ed.2d 347 (1987). We find that trial counsel's decision not to pursue a defense, which upon investigation appears fruitless, was reasonable and did not render his performance deficient.
Furthermore, Floyd has failed to prove that he was prejudiced by the absence of a request for psychiatric assistance, because he has failed to show that he would have been entitled to psychiatric assistance at trial. In Ake v. Oklahoma,470 U.S. 68, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985), the United States Supreme Court held that "[w]hen the defendant is able to make an ex parte threshold showing to the trial court that his sanity is likely to be a significant factor in his defense," he is entitled to psychiatric assistance at trial. 470 U.S. at 83, 105 S.Ct. at 1096. At the evidentiary hearing on his 1987 Rule 20 petition, appellant offered no evidence to show that his mental condition was likely to be a "significant factor" at his trial. Indeed, the only evidence on this issue is his trial counsel's judgment that appellant's mental condition was not helpful to his defense. Thus, there is no reasonable probability that, but for *Page 1230 
the absence of a request for psychiatric assistance, the outcome of appellant's trial would have been different.Cochran v. State, supra, 548 So.2d at 1070.
Floyd's final contention that his trial counsel was ineffective is the argument that he was ineffective in not claiming that the prosecution had failed to prove that Floyd had the requisite intent to kill.
The circuit court's findings on this claim were as follows:
 "Petitioner's fifth allegation of ineffective assistance is that Collier should have objected to petitioner's death sentence on the ground that petitioner lacked the intent to kill Mr. Jackson that is necessary to support a sentence of death. Petitioner did not establish that he was prejudiced since the evidence at trial established his intent to kill. In his confessions, petitioner admitted hitting Mr. Jackson, kicking Mr. Jackson, jumping on Mr. Jackson's chest, helping put a rope around Mr. Jackson and helping to tie the rope to a tree in order to choke Mr. Jackson. Petitioner's participation in the brutal murder of Mr. Jackson shows that he intended to kill him."
These findings are supported by the evidence at trial.See, Floyd v. State, 486 So.2d 1309, 1312-13 (Ala.Cr.App. 1984). In light of the evidence adduced at trial, which showed appellant to be a willing and active participant in this brutal murder, any claim by trial counsel that his client lacked the requisite intent to kill would have been unsuccessful. Thus, there is no reasonable probability that, but for his trial counsel's failure to raise this claim, Floyd would not have been sentenced to death.
Contrary to his contentions, Floyd received effective representation of counsel at trial. We are now left to determine whether he also received the same on appeal.
Floyd raises six ineffective assistance of counsel claims on appeal against the attorney who represented him on direct appeal. His first contention is that his appellate counsel was ineffective in failing to raise the prosecution's use of its peremptory strikes to remove blacks from his jury.
With regard to this claim, the circuit court found as follows:
 "Petitioner's first allegation of ineffective assistance by his appellate lawyer is that Anderson did not raise the denial of trial counsel's mistrial motion based on the State's peremptory jury strikes. Anderson did not raise this issue on appeal because he did not consider it to have merit.
 "At the time of trial, and during Anderson's representation of petitioner on direct appeal, Swain v. Alabama, 380 U.S. 202 [85 S.Ct. 824, 13 L.Ed.2d 759] (1965), controlled challenges to prosecution peremptory strikes as being racially motivated. Under Swain, a defendant could not make out a claim of racial discrimination by simply proving that the prosecution peremptorily struck prospective black jurors at his trial. Under Swain, a defendant had to prove that, over time, a prosecutor systematically excluded all blacks from jury service. The showing made by trial counsel in connection with his mistrial motion does not satisfy Swain. Anderson's decision not to raise this claim, seen in light of the controlling law at the time, was reasonable and did not render his performance deficient or below prevailing professional norms."
As previously stated, Floyd was tried over three years before the decision in Batson was announced. At the time Batson was released, Floyd's conviction had already been reviewed by both this Court and the Alabama Supreme Court. Certiorari in Floyd's case was denied by the United States Supreme Court subsequent to that Court's decision in Batson.
At the evidentiary hearing, appellate counsel testified that he reviewed the transcript of appellant's trial and made a determination to focus his appeal on only the best issues. Appellate counsel did so because he did not want the weaker issues to detract from the consideration given his best issues. We find that such a decision does not constitute ineffective assistance of counsel. Rather, this selection process is *Page 1231 
the essence of effective appellate advocacy. See, e.g., Smithv. Murray, 477 U.S. 527, 536, 106 S.Ct. 2661, 91 L.Ed.2d 434
(1986).
Neither was Floyd's appellate counsel ineffective in failing to anticipate the result in Batson v. Kentucky, supra. As previously mentioned, attorneys need not be prescient in order to render effective assistance. Elledge v. Dugger, supra,823 F.2d at 1443. Further, Floyd's appellate counsel could not properly have raised a Batson claim for the first time in the United States Supreme Court after Batson was decided, for the simple reason that that Court does not have jurisdiction to consider claims that were not first raised in State court.Street v. New York, 394 U.S. 576, 581-82, 89 S.Ct. 1354
[1360-61], 22 L.Ed.2d 572 (1969); Bailey v. Anderson,326 U.S. 203, 206-07, 66 S.Ct. 66, 68, 90 L.Ed. 3 (1945).
In his 1987 Rule 20 petition, Floyd alleged that his appellate counsel was ineffective because he failed to argue that appellant's death sentence was cruel and unusual punishment. Floyd now contends that his death sentence was cruel and unusual punishment, in violation of both the United States and the Alabama Constitutions because the Alabama courts apply the "heinous, atrocious, or cruel" aggravating circumstance, § 13A-5-49(8), Code of Alabama 1975, in an arbitrary and capricious manner, and further, that this circumstance is unconstitutionally vague. Floyd, however, never challenged his death sentence based on the finding that his offense was especially "heinous, atrocious, or cruel."
As to the claim raised in the 1987 Rule 20 petition, the circuit court found:
 "Petitioner's seventh allegation of ineffective assistance by his appellate lawyer is that he should have challenged petitioner's death sentence as being cruel and unusual punishment. Anderson made a strategic decision to argue that petitioner's voluntary testimony against his co-defendants warranted a sentence of life without parole. He did not think that a challenge to petitioner's death sentence as cruel and unusual punishment was as persuasive as focusing on petitioner's voluntary assistance to the State."
The circuit court's findings did not address the claim raised in this appeal, since that claim was not raised in the 1987 Rule 20 petition. Floyd, therefore, attempts to raise a claim for the first time in this Court which was not raised in his Rule 20 petition.
As to a writ of error coram nobis, the predecessor to a Rule 20 petition, this Court has held that a claim cannot be raised for the first time on appeal. E.g., Jackson v. State,501 So.2d 542, 544 (Ala.Cr.App. 1986), cert. denied, 483 U.S. 1010,107 S.Ct. 3242, 97 L.Ed.2d (1987); Boatwright v. State,494 So.2d 929 (Ala.Cr.App. 1986). "[C]ases dealing with the writ of error coram nobis may be used in interpreting Rule 20." Ex parteLockett, 548 So.2d 1045 (Ala. 1989). This holding as to post-conviction petitions is consistent with Alabama's contemporaneous objection rules, which limit appellate review to matters raised by timely objection and made the subject of an adverse ruling. See e.g., Walker v. State, 416 So.2d 1083,1097 (Ala.Cr.App. 1982); Wood v. State, 416 So.2d 794, 799
(Ala.Cr.App. 1982). Since this specific claim was never presented to the circuit court, there has been no adverse ruling as to this claim from which to appeal.
Even if this issue were correctly before this Court, Floyd would still not be entitled to relief. Appellate counsel's performance was not rendered ineffective by his decision to forgo challenging his client's death sentence as cruel and unusual. As noted above, appellate counsel decided what issues to raise on appeal only after a thorough study of the entire trial transcript and decided that his strategy would be to focus on what counsel described as the "best" issues, namely, those he felt had the greatest chance of being successful on appeal. The fact that appellate counsel focused on different issues from the one that Floyd's current counsel deems to be "best" does not mean that his performance was outside the wide range of effective representation of counsel as set out inStrickland v. Washington, supra. *Page 1232 
Floyd also contends that his appellate counsel was ineffective in failing to challenge on appeal the admission of his confession.[1]
As to this claim, the circuit court found as follows:
 "Petitioner's fifth allegation of ineffective assistance by his appellate lawyer is that he did not challenge the admission of petitioner's confession. Appellate counsel reviewed all of the available issues and made a strategic decision to focus on issues other than this one.
 "Further, the evidence of voluntariness was overwhelming and included petitioner's own testimony that he voluntarily confessed and that the testimony of the officer who took his confession was true."
An examination of the trial transcript reveals that, during a hearing on Floyd's motion to suppress his statement, Floyd testified as follows:
 "Q So, is what Detective Ward, about how you gave the statement and all, is there anything from what you heard he said, is there anything he said that's not true about taking these statements?
"A No, sir.
"Q So, you gave these statements voluntarily?
"A Yes, sir."
From this excerpt it is readily apparent that Floyd's confession was voluntary. An attorney does not have to raise all conceivable claims in order to render effective assistance.Lindsey v. Smith, 820 F.2d 1137, 1144 (11th Cir. 1987); cert.denied, 489 U.S. 1059, 109 S.Ct. 1327, 103 L.Ed.2d 595 (1989). Since appellate counsel's testimony was that he chose to focus on the issues which he thought had the best chance of winning, it is only logical that he would elect not to raise this issue on appeal. Again, this selection process is the hallmark of effective appellate advocacy. Smith v. Murray, supra,477 U.S. at 536, 106 S.Ct. at 2667.
Appellant next contends that his appellate counsel was ineffective in failing to raise on appeal the admissibility of a dispatch log kept by the victim's employer.
With regard to this claim, the circuit court found:
 "Petitioner's second allegation of ineffective assistance by his appellate lawyer is that Anderson did not raise the admission of a log, kept as a business record by the victim's employer, as an issue on appeal. Anderson was aware of trial counsel's objection to the admission of this log, and the denial of that objection was noted in the summary of adverse rulings included in petitioner's brief on appeal. Anderson's strategic decision to focus on other issues did not render his performance deficient. Further, petitioner was not prejudiced by Anderson's decision not to raise the admission of the cab company log as an issue on appeal because the log was properly admitted as a business record."
Evidence adduced at trial clearly established that the dispatch log of the cab company was a business record and was admissible into evidence as such. See, e.g., Hammett v. State,482 So.2d 1330, 1334 (Ala.Cr.App. 1985).
Appellate counsel was aware of trial counsel's objection to the admission of this log, and the denial of that objection was noted on appeal. As previously noted, however, appellate counsel chose to focus on the issues he thought were best after reviewing the transcript. This strategic decision to focus on other issues did not render his performance deficient.Smith v. Murray, supra; Strickland v. Washington, supra.
Appellant Floyd's final argument is that his appellate counsel was ineffective in failing to raise on appeal the ineffectiveness of Floyd's trial counsel. *Page 1233 
As to this claim, the circuit court found as follows:
 "Petitioner's ninth allegation of ineffective assistance by his appellate lawyer is that Anderson should have claimed that petitioner's trial lawyer was ineffective. Anderson did not consider Collier to have been ineffective. While Anderson did not agree with every decision made by trial counsel, he recognized that every trial presents a number of judgment calls. Anderson's decision to focus on other issues was not unreasonable and did not render his performance deficient. Further, as found above, Collier was not ineffective."
As we have already determined, Floyd's trial counsel did not render ineffective assistance. For that reason alone, Floyd would not be entitled to relief on this claim. Furthermore, failure to raise this claim on appeal was again a decision of strategy. As stated in Strickland v. Washington, supra,466 U.S. at 690, 104 S.Ct. at 2065, such decisions are "virtually unchallengeable."
 IV
Appellant Floyd raises four issues on appeal from the denial of his 1988 Rule 20 petition. Two of these issues involve hisBatson claim and were addressed in Part I of this opinion. The remaining two issues address the "heinous, atrocious, or cruel" argument referred to in Part III, which this court held was barred from consideration on appeal because it was not raised in the 1987 Rule 20 petition.
Floyd has attempted to circumvent this adverse result by raising the issue in the 1988 Rule 20 petition. His attempt must fail, for two reasons. First, he cannot meet the requirement of Rule 20.2(b), A.R.Crim.P.Temp., that good cause exists why this ground was not known or could not have been ascertained through reasonable diligence at the time of the filing of the first petition. The legal basis for this claim was well known prior to the time of the filing of the 1987 petition. Appellant contends that his argument is grounded on the recent case of Maynard v. Cartwright, 486 U.S. 356,108 S.Ct. 1853, 100 L.Ed.2d 372 (1988). As this Court has recognized, however, Maynard is "in effect a restatement" ofGodfrey v. Georgia, 446 U.S. 420, 100 S.Ct. 1759,64 L.Ed.2d 398 (1980). Bui v. State, 551 So.2d 1094 (Ala.Cr.App. 1988),aff'd, 551 So.2d 1125 (Ala. 1989). As can be seen, Godfrey was decided several years before appellant's trial even began. Moreover, in response to Godfrey, the Alabama Supreme Court held in Ex parte Kyzer, 399 So.2d 330, 334 (Ala. 1981), that this aggravating circumstance was "intended to apply to only those conscienceless or pitiless homicides which are unnecessarily torturous to the victim." Because Godfrey andKyzer had been decided long before appellant's 1987 Rule 20 petition was filed, he cannot assert that the claim was not known and could not have been known with reasonable diligence prior to his first petition.
Second, Floyd's claim must fail because, since this issue was not raised at trial or on direct appeal, it is procedurally barred. The law regarding procedural default has already been set out in Part I of this opinion. We see no need to repeat that law here. Floyd argues, however, that the circuit court dismissed as to this ground because it was contained in a second or successive petition in violation of Rule 20, A.R.Crim.P.Temp., and not for the grounds stated above. We have previously held that a trial court's ruling will be affirmed if it was correct for any reason. E.g., Nicks v. State,521 So.2d 1018 (Ala.Cr.App. 1987), aff'd, 521 So.2d 1035 (Ala.), cert.denied, 487 U.S. 1241, 108 S.Ct. 2916, 101 L.Ed.2d 948 (1988). Thus, the circuit court's ruling is due to be affirmed.
The final issue raised by appellant on appeal of the denial of his 1988 Rule 20 petition is that his counsel were ineffective for failing to raise this issue at trial or on appeal. The standards for determining ineffective representation of counsel are contained in Strickland v.Washington, supra, and are set out in Part III above.
Here, appellant cannot show that his attorneys' conduct was unprofessional. In Maynard v. Cartwright, supra, the United States Supreme Court held, regarding the *Page 1234 
use of the words "especially heinous, atrocious, or cruel" to describe the aggravating circumstance, that the words themselves give little guidance as to the facts to which such words might be applicable, and it condemned a standardless finding of this aggravating circumstance.
In this case, there was no standardless application of this aggravating circumstance. In Ex parte Kyzer, 399 So.2d 330, 334
(Ala. 1981), decided almost two years before Floyd's trial, our Supreme Court held that this aggravating circumstance "was intended to apply to only those conscienceless or pitiless homicides which are unnecessarily torturous to the victim." This case clearly falls within that category. In determining sentence, the trial court found as follows:
 "The Court does find from the evidence presented at trial that the capital offense was especially heinous, atrocious and cruel compared to other capital offenses. This finding is based upon the evidence that the victim was repeatedly kicked, stomped and beaten, tied to a tree with the rope around his neck, and run over by his own taxi cab. The evidence indicates that at no time did the victim ever resist or fight back. The conclusion of the Court as to the heinous, atrocious or cruel nature of the offense is made after a careful review of all the evidence and after considering the totality of the circumstances of this case."
Thus, the Alabama courts had already limited this aggravating circumstance prior to the decision in Maynard v. Cartwright,supra. For this reason, the finding in this case is not contrary to Maynard, nor to the earlier case on which it is based, Godfrey v. Georgia, supra. Therefore, appellant's counsel were not ineffective because of their failure to raise this issue at trial or on appeal.
Appellant has also failed to show any prejudice resulting from counsel's failure to raise this issue. Since Floyd's sentence was not in violation of the doctrine ofMaynard and Godfrey, it cannot be said that the result of the proceeding would have been different had the issue been raised.
Based on the foregoing, the judgments of the circuit court are due to be, and they are, hereby, affirmed.
AFFIRMED.
All the Judges concur.
[1] This contention appears to be based on the mistaken belief that Floyd was arrested without a warrant and without probable cause. Testimony at Floyd's trial, however, established that Floyd was arrested on a capital murder warrant issued after Franklin Ellis, an individual who had backed out of participating in this crime, told the police that Floyd and others drove off with the victim on the night of the murder.