JOINER, Judge,
dissenting.
I respectfully dissent. As the main opinion explains, Howard Carl Whited, on appeal, contends that his trial counsel was ineffective because, he says, among other things, his trial counsel waived closing argument. Specifically, Whited argues that “[t]he primary opportunity to explain the evidence .. to the jury occurs when counsel makes his closing argument at the end of the case[, and that] [t]he gravest shortcoming in [Whited’s trial counsel’s] representation of [Whited] — the principal error that most prejudiced [Whited]— ... was [his trial counsel’s] failure to make a closing argument.” (Whited’s brief, p. 76.) I agree.
In Herring v. New York, 422 U.S. 853, 95 S.Ct. 2550, 45 L.Ed.2d 593 (1975), the United States Supreme Court explained the importance of closing argument as follows: ,
*64 “It can hardly be questioned that closing argument serves to sharpen and clarify the issues for resolution by the trier of fact in a criminal case. For it is only after all the evidence is in that counsel for the parties are in a position to present their respective versions of the case as a whole. Only then can they argue the inferences to be drawn from all the testimony, and point out the weaknesses of their adversaries’ positions. And for the defense, closing argument is the last clear chance to persuade the trier of fact that there may be reasonable doubt of the defendant’s guilt. See In re Winship, 397 U.S. 358 [(1970)].
“The very premise of our adversary system of criminal justice is that partisan advocacy on both sides of a case will best promote the ultimate objective that the guilty be convicted and the innocent go free. In a criminal trial, which is in the end basically a factfinding process, no aspect of such advocacy could be more important than the opportunity finally to marshal the evidence for each side before submission of the case to judgment.”
422 U.S. at 862. Although closing arguments are important, our caselaw makes it abundantly clear that closing arguments may be waived and that a trial counsel’s decision to waive closing argument is not, in itself, ineffective assistance of counsel. See Young v. State, 887 So.2d 320 (Ala.Crim.App.2004) (holding that “ ‘waiver of closing argument, without more, does not constitute ineffective assistance of counsel’”), and Behel v. State, 405 So.2d 51 (Ala.Crim.App.1981) (holding that even if trial counsel’s “failure to make a closing argument is ultimately viewed as a mistake unfavorable to his client, that alone is not sufficient to demonstrate inadequate representation”). Our caselaw, however, does not foreclose the possibility that, under certain circumstances, a trial counsel’s waiver of closing argument may, in fact, be ineffective assistance of counsel.
The main opinion explains that the circuit court, in its order denying Whited’s ineffective-assistance-of-counsel claim,
“made the following findings of fact:
“ ‘[T]he Court finds that counsel for [Whited] did in fact waive the right to offer a closing argument to the jury. During the hearing on the motion for a new trial, trial counsel for [Whited] stated it was trial strategy in not offering a closing and to prevent the prosecution from further commenting on [Whited’s] conduct.
“‘It is this Court’s understanding that the law requires the Court give deference to trial counsel’s decisions and strategic choices. And it is the Court’s opinion that the waiver of a closing argument did not affect the outcome of the verdict. As such, the Court does not find that counsel’s conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result. And the Court does not find that [counsel’s failure to make a closing argument] warrants setting aside the judgment of the jury and granting a new trial.’
“(Record on return to second remand, C. 5-6.)”
180 So.3d at 60-61. The circuit court’s finding that trial counsel’s decision to waive closing argument was “trial strategy ... to prevent the prosecution from further commenting on [Whited’s] conduct” (record on return to second remand, C. 5), however, is not supported by the record.
Here, at the hearing on Whited’s motion for a new trial Whited’s trial counsel did not provide any reason — much less a strategic one — for having waived closing argu *65 ment. Instead, when asked directly by Whited’s appellate counsel to explain the decision to waive closing argument, Whited’s trial counsel stated that he “did not recall” when he decided to waive closing argument,[4] stated generally that whether to waive closing argument would be “part of the attorney’s strategy” (R. 349), and, further, stated that waiving closing argument “would be based on everything that came out during the trial.” (R. 395.) Whited’s trial counsel certainly did not testify, as the circuit court’s order finds, that his decision to waive closing argument was “to prevent the prosecution from further commenting on [Whited’s] conduct.” Thus, the record demonstrates that Whited’s trial counsel, although directly questioned regarding his “strategy” to waive closing argument, was unable to provide a reason for doing so.
The main opinion, although concluding that “[t]he record indicates that, at the hearing on Whited’s motion for a new trial, trial counsel testified that his decision to waive closing argument was trial strategy,” 180 So.3d at 61, the main opinion also recognizes that Whited’s trial counsel was unable to recall the basis for his decision to waive closing argument. I agree with the main opinion’s conclusion that Whited’s “trial counsel’s inability to recall the basis of his strategic decision to waive closing argument in this case limits this Court’s ability to review counsel’s representation at trial,” and that our review is also limited by the United States Supreme Court decision in Strickland because we “must indulge a ‘strong presumption’ that counsel’s conduct falls within the wide range of reasonable professional assistance.” 180 So.3d at 61 (citing Strickland, 466 U.S. at 689). I do not agree, however, with this Court’s conclusion that the decision of Whited’s trial counsel to waive closing argument “falls'within the wide range of reasonable professional assistance” because, under the circumstances of this case, there exists no reasonable strategic reason to waive closing argument.
The main opinion assigns only one “possible” strategic decision for waiving closing argument in this case. Specifically, the main opinion explains that
“[i]t is possible that trial counsel made a strategic choice to waive closing argument in order to prevent the prosecutor from returning on rebuttal and going into specific detail regarding the evidence presented at trial.”
180 So.3d at 61. Although preventing the State from being able to make a rebuttal closing argument has been upheld as an effective strategic decision in both Floyd v. State, 571 So.2d 1221 (Ala.Crim.App.1989), rev’d on other grounds, Ex parte Floyd, 571 So.2d 1234 (Ala.1990), and Lawhorn v. State, 756 So.2d 971 (Ala.Crim.App.1999), those cases present circumstances not present in this case.
Specifically, in Floyd. this Court addressed Floyd’s claim that his trial counsel was ineffective when trial counsel waived closing argument. The circuit court in *66 addressing Floyd’s allegation concluded that
“ ‘[Floyd’s] second allegation of ineffective assistance is that his trial lawyer waived closing argument at the guilt stage. [Floyd’s trial counsel] did waive his closing argument pursuant to a strategic decision.
“‘[Floyd’s trial counsel] based his decision to waive closing argument on two factors. First, [Floyd’s trial counsel] had no strong arguments available to dissuade the jury from convicting his client or- to persuade them to find petitioner guilty of a lesser offense. Second, the prosecution’s initial closing argument was véry brief and it appeared that the prosecution was saving its persuasive argument for last. [Floyd’s trial counsel] thought the potential harm to his client from the prosecution’s second closing argument outweighed any benefit to be obtained from [Floyd’s trial counsel’s] argument. [Floyd’s trial counsel] had made the same decision in other cases with some success.’ ”
571 So.2d at 1227. This Court then held:
“The testimony of Floyd’s trial coun- . sel established that he made a strategic decision to forgo his closing argument in order to deprive the prosecution of its main opportunity to argue its case to the jury. The uncontradicted testimony of trial counsel was that the prosecutor’s initial closing argument had been quite brief and had consisted of little more than a reading of the indictment. In light of this, Floyd’s trial' counsel decid- ’ ed that because he ’had' no persuasive . arguments, his client’s interest could best be served by denying the prosecution, who had the burden of proof, of its chance to argue how .that burden had been met. This is exactly the sort of strategic decision which the United States Supreme Court has held to be virtually unchallengeable in Strickland v. Washington, 466 U.S, at 690, 104 S.Ct. at 2065. Furthermore, Floyd did not even suggest a manner in which his trial counsel could have argued in closing that would have affected the outcome of his trial. Thus, Floyd has failed to establish a reasonable probability that, but for his lawyer’s waiving his guilt-stage closing argument, the outcome of his trial would have been different. Therefore, the circuit court’s findings were correct.”

Id.

Similarly, in Lawhorn — a death-penalty case — Lawhorn argued in a postconviction petition that his trial counsel was ineffective for failing to make a closing argument during the penalty phase of his trial. The circuit court in its order denying Lawhorn postconviction relief found that
“‘[a]t the Rule 32 hearing, Fanning Lawhorn’s trial counsel,] testified that he made a strategic decision that he would not make a closing argument during the penalty phase of the trial. It was Fannin’s understanding that if he waived closing argument that the district attorney would not be allowed to argue. Fannin did not want to give the district attorney an opportunity on rebuttal to get up and point at Lawhorn and call him a cold-blooded murderer and back-shooter. Fannin wanted to prevent the district attorney from inflaming the minds of the jury.

(( (

“ ‘Trial counsel’s decision to waive his closing argument did not render his performance deficient because it was a strategic decision to keep the district attorney from making a closing argument. This Court has watched district attorney Rumsey on many occasions during clos *67 ing argument. He is powerful and effective during closing argument. Based' on this Court’s experience,. it is not an unusual tactical decision in Talladega County for attorneys to waive closing argument to prevent district attorney Rumsey from making a closing argument....’”
Lawhorn, 756 So.2d at 987 (quoting the circuit court’s order). This Court, relying on our decision in Floyd, concluded that
“we [have] held that it was not ineffective assistance of counsel when defense counsel made a strategic decision to waive closing arguments in order to deprive the prosecution of its main opportunity to -argue to the jury. Similar to the situation in Floyd, Lawhorn’s trial counsel did not offer closing argument in an attempt to deprive the prosecution of labelling Lawhorn a ‘cold-blooded murderer and a back-shooter.’ .‘This is exactly the sort of strategic decision which the United States Supreme Court has held to be virtually unchallengeable in Strickland v. Washington, 466 U.S. at 690, 104 S.Ct. at 2065.’ Floyd, 571 So.2d at 1227.”

Id.

Here, unlike in Floyd and Lawhom, Whited’s trial counsel did not provide any strategic reason for having waived closing argument. Instead, as set out above; Whited’s trial counsel, at the hearing on the motion for a new trial, stated that he “did not recall” when he decided to waive closing argument, and stated generally that whether to waive closing argument would be “part of the attorney’s strategy” (R. 349) and, further, stated that waiving closing argument “would be based on everything that came out during the trial.” (R. 395.) Whited’s trial counsel did not testify, as the trial counsel in Floyd and Lawhom did, that his decision .to waive closing, argument was to prevent the .State from, further commenting on Whited’s conduct.
Additionally, unlike in Floyd, Whited’s trial counsel had “strong arguments available to dissuade the jury from convicting” Whited. As set out. in the main opinion, the State’s evidence consisted of only two witnesses — M.H. and Robertson. The only evidence presented by the State establishing Whited’s guilt was M.H.’s testimony that Whited “took [her] panties off’ and “got on top of [her] and then he stuck his penis in [her]! back side.” (R.. 83.) That evidence, however, was qualified by M.H.’s statement that “[i]t was dark” in the bedroom and that she “couldn’t see their faces.” (R. 81.) There also existed no physical evidence linking Whited to the offense. Additionally, the evidence presented at trial also, established that M.H. contracted a sexually transmitted disease that Whited did not have. Furthermore, Whited presented the testimony of three witnesses — Jeffery Whited, Huían Whited, and Daniél Stidham — which established a strong alibi for Whited on the date of the offense.
Finally, unlike Floyd, the prosecutor’s initial closing argument was lengthy, persuasive, and emotional. During its initial closing argument, the prosecutor referenced other criminal activity that had no bearing on, or relevance to, Whited’s trial. Specifically, the prosecutor argued:
“I flipped on the [television] this morning about five o’clock on Channel 13 and one of the first things I see on the news is where a convicted felon from another state was caught here in Alabama because he had molested and sodomized a thirteen year old girl in am other state. I thought, “You can’t get away from it.’ It is not something even though we hear about it and we know in the back of our mind that it goes on, it is not something we like to think about or *68 ' that it goes on in oúr society especially here in Blount County.”
(R. 284-85.) The prosecutor then discussed how difficult it was for M.H. to relive the events of May 19; 2005, and referred to M.H. as a “hero.” The prosecutor, then reiterated the evidence against Whited characterizing it as “ugly,” “nasty,” and “repulsive” and alleged that Whited “humiliated] [M.H.], beat[] [M.H.], [and] hit[ ] [M.H.],” and, in a whisper, reiterated that Whited told M.H. that he was going to kill her if she told anybody. The prosecutor, while crying, then concluded: ■
“(Crying) I would ask that when you go back — I’m so sorry. I was not going to do this. When you go back in there, just remember it is what it is. And what it is — is ugly. What that man did to that child is a crime.”
(R. 295.)
Thus, there are at least three critical factual differences between Floyd and Lawhorn and the circumstances present in Whited’s case. First, Whited’s trial counsel could provide no strategic reason for waiving closing argument. In fact, as a judge with over 20 years’ experience (including more than 18 as a trial judge), after reviewing the record in this case, I cannot think of any reason — strategic or otherwise — for Whited’s trial counsel to have abandoned Whited’s last chance “to marshal the evidence” in his favor in an attempt to persuade the jury of a reasonable doubt of Whited’s guilt. Second, as set out above, Whited’s trial counsel had “strong arguments- available to dissuade the jury from convicting” Whited — especially 'considering that this case turned on the credibility of -the witnesses. Finally, the State’s initial closing argument can neither be characterized as “very brief,” nor does “it appear[ ] that the prosecution was saving its persuasive argument for last.” Floyd, supra. Instead, the State’s initial closing argument was lengthy, persuasive, and emotional. Here, when Whited’s trial counsel waived his closing argument, he left the jury with only the tearful, emotional plea of the prosecutor to find Whited guilty of first-degree sodomy.
Consequently, although in both Floyd and Lawhorn it may have been a reasonable-strategic decision for trial-counsel to forgo closing argument, evaluating “‘the reasonableness of counsel’s challenged conduct on the facts of [this] particular case, viewed as of the time- of counsel’s conduct,’ ” Strickland, 466 U.S. at 689, I cannot agree that Whited’s trial counsel’s actions- were within the “wide range of professionally competent assistance” when he waived closing, argument, see Strickland, 466 U.S. at 689, abandoning “the last clear chance to persuade the [jury] that there may be reasonable doubt of [Whited’s] guilt.” Herring, supra.
Moreover, the main opinion’s “possible” strategic reason assigned to Whited’s trial counsel’s waiver of closing argument is inconsistent with trial counsel’s testimony at the hearing on the motion for a new trial, at which Whited’s-trial counsel, testified he does not “trust any jury” to pick up on inconsistent statements or “subtle facts” elicited during trial testimony. (R. 368-71.) Thus, Whited satisfied the -first prong set forth in Strickland.
As to the second prong of Strickland, under the circumstances presented in this case it is clear that Whited was prejudiced by his trial counsel’s failure to give a closing argument. As set out above, the .State’s evidence in this case was not overwhelming — it contained inconsistencies, there was no physical evidence linking Whited to the offense, and the State’s case was undermined by medical evidence es *69 tablishing that M.H. had a sexually transmitted disease that Whited did not have.[5] These matters, along with Whited’s alibi defense, if presented to the jury in closing argument, would have “sharpened] and clarif[ied] the issues” that create reasonable doubt as to whether Whited committed first-degree sodomy. Herring, supra. Failing to present to the jury any argument as to these important issues, in my opinion, undermines any confidence in the outcome of this proceeding. In other words, I believe that had Whited’s trial counsel presented closing argument “there is a reasonable probability that ... the result of the proceeding would have been different” — that is, there is “a probability sufficient to undermine confidence in the outcome.” Strickland, 466 U.S. at 694. Accordingly, Whited has satisfied the second prong of Strickland, See, e.g., People v. Wilson, 392 Ill.App.3d 189, 197-202, 911 N.E.2d 413, 420-24, 331 Ill.Dec. 592, 599-603 (2009) (holding that trial counsel’s waiver of closing argument was ineffective assistance of trial counsel that resulted in prejudice to the defendant); and Commonwealth v. Sparks, 372 Pa.Super. 463, 539 A.2d 887 (1988) (same).
Based on the foregoing reasons, I respectfully dissent.

. Although I recognize that the circuit court explained that Whited’s trial counsel’s ability to recollect the events surrounding Whited’s trial were diminished by the sudden death of trial counsel’s wife shortly after the trial, Whited’s trial counsel was able to recall his specific strategy for other portions of Whited’s trial. Specifically, Whited’s trial counsel testified that his "ultimate strategy would have been that this case be continued over from trial docket to trial docket until the child turned of age and disappeared.” (R. 340.) Additionally, Whited’s trial counsel testified that his approach to reach a successful conclusion for Whited during the trial was to impeach the victim’s testimony and "show that [Whited] was not at the scene of the crime.” (R. 341.)

. Although I do not believe that the State's evidence was overwhelming, I do not intend to imply that the State’s evidence was insufficient to convict Whited of first-degree sodomy, and, if granted a new trial, Whited could, even with competent counsel, be found guilty of first-degree sodomy. That, however, does not lessen this Court’s duty to ensure that Whited received constitutionally effective counsel in this case.