[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 973 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 974 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 975 
James Charles Lawhorn appeals from the denial of his petition for postconviction relief filed pursuant to Rule 32, Ala.R.Crim.P. On April 26, 1989, Lawhorn was convicted of murder, an offense made capital by § 13A-5-40(a)(7), Ala. Code 1975.[1] In accordance with §§13A-5-45 and -46, Ala. Code 1975, a sentencing hearing was held before the jury, after which, the jury, by a vote of 11-1, returned an advisory verdict recommending that Lawhorn be sentenced to death. On June 26, 1989, the trial court held a sentencing hearing, in compliance with § 13A-5-47, Ala. Code 1975, and sentenced Lawhorn to death by electrocution.
This court and then the Alabama Supreme Court affirmed Lawhorn's conviction and death sentence. Lawhorn v. State, 581 So.2d 1159
(Ala.Cr.App. 1990), aff'd, 581 So.2d 1179 (Ala. 1991). The United States Supreme Court denied certiorari review. 502 U.S. 970, 112 S.Ct. 445, *Page 976 116 L.Ed.2d 463 (1991). All issues cognizable on direct appeal have been scrutinized, including those cognizable under the "plain error" doctrine.
Lawhorn filed his Rule 32 petition on May 3, 1993. The trial court held a lengthy evidentiary hearing on the allegations in Lawhorn's petition on October 30-31, 1995, and, in a thorough 67-page order, denied all relief on November 27, 1996. The Honorable William C. Sullivan, the circuit judge who presided over Lawhorn's trial, also presided over the evidentiary hearing on the Rule 32 petition.
The essential facts of this case were recited by this court in Lawhorn v. State, 581 So.2d at 1161-62. The state's evidence tended to show that William Berry (the victim) and Lawhorn, in the presence of Altion Maxine Walker (Lawhorn's aunt), got into an argument at a gasoline service station during the late morning of March 31, 1988. On April 2, 1988, Berry's body was found in a wooded area off Wiregrass Road, a road that intersects with Highway 148. An autopsy revealed 27 gunshot wounds, 4 of which were made by either a rifle or a pistol. Two of these four wounds caused death instantly. The remaining wounds were caused by a shotgun. On April 2, the day Berry's body was discovered, Lawhorn, after being advised of his rights guaranteed by Miranda v. Arizona, 384 U.S. 436,86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), was questioned about the murder. He gave an initial statement to the police in which he stated that Walker had tried to hire him to kill Berry, but that he did not do it. He said that he was in another city on the day of the murder. On April 7, Lawhorn, after acknowledging that he understood his rights and after signing a waiver on which he wrote, "I do not want a lawyer," gave a second statement to the police in which he related the following:
 "From the Monday prior to the murder through the Friday after the murder, appellant stayed with his aunt, Walker. During the week, Walker told him that she was scared of Berry; that she had had her son, Kilgore, `beat his ass'; and that she wanted to `get rid' of him. Nearly everyday, she asked appellant to `get rid' of Berry. On Wednesday, she told him that she would pay him, and he said no. On Thursday, appellant and Walker, in Walker's truck, ran some errands in Alexander City. They picked up appellant's brother, Mac Lawhorn, about 1:30 p.m. On their way to Sylacauga, Walker asked Mac Lawhorn if he would be interested in making some money, and he answered, `Yes.' He asked her what was the job, and she replied, `Get rid of William.' Appellant further explained that Walker wanted to hire them for $100 to get rid of Berry. As they rode to Sylacauga, Mac Lawhorn was lying down in the back seat, at his aunt's direction.
 "In Sylacauga, they went to the Otasco hardware store where appellant retrieved a 12-gauge single-shot shotgun and four shells from the automobile of his cousin Kilgore, Walker's son. Then, between 4:00 p.m. and 5:00 p.m., the three went to a wooded area, where, according, to Walker, she and the victim `go parking,' and appellant and Mac Lawhorn got out of the truck to wait in the woods until Walker returned with Berry. Appellant had a pistol in his pocket that he had gotten out of Walker's truck, and Mac Lawhorn was carrying the shotgun, which he loaded.
 "In less than 30 minutes, Walker returned with Berry. Appellant and Mac Lawhorn were hiding in the woods. Berry and Walker got out of Walker's truck, and according to Walker's version that she later told appellant and his brother, Walker went across the road to the bushes to `use the bathroom.' Berry went across the road with her, but then he began running up the road. (Walker later told them that he had been `real' scared `the whole time' that Kilgore was waiting on him.) Walker then went to the two men and told them that Berry had run up the road. Then, Walker got into the driver's seat of her truck, the two men lay down in the bed of the *Page 977 
truck, and Walker told them that she would slam on the brakes when she caught up with Berry.
 "We now refer to the appellant's actual words to explain the subsequent occurrences:
"Q . . . And what happened after that?
 "A When she got to him, she slammed on brakes. My brother raised up, shot him in the shoulder. . . . He jumped — He hit the ground, then he jumped back up and he started running again. My brother shot him again.
". . . .
 "Q Was he running in the road or towards the woods?
"A He was running towards the woods.
 "Q Okay. When your brother shot him the first time, was W.C. [the victim] facing your brother or was his face away from your brother?
"A Facing.
 "Q Because y'all had passed by W.C. when he leaned up he was smack face on with W.C.?
"A Yeah.
". . . .
"Q All right. And then what happened?
"A After he shot him?
"Q I believe you said he fell?
 "A Yeah. He hit — he hit the road. After he hit the road, he jumped up and he hollered. I remember him hollering, so my brother shot him again . . . and he was still running.
"Q Was he running off the road that time?
 "A When he shot the second time, he was running off the road, and he hit — he hit the ground. My brother shot at him again and missed. That's when he hit the dirt in front of him, hit the dirt.
". . . .
"Q Okay. How may times did you shoot him?
"A Approximately three times.
 "Q Okay. And you said he was still making noises when you walked down there where he was at?
 "A It just, you know, like gurgling noises. . . . But he was already dead.
 "Q . . . . And how far from the truck did you have to go down there where he was at?
"A About 15, 20 feet.
"Q What area of the body did you shoot?
 "A I don't — I don't really know. I just — it was quick. It was real quick, because I got, you know — We was — My aunt was scared of somebody seeing her truck, so she told us to hurry up. She didn't want her truck seen.
". . . .
 "Q Did you and Mac say anything to each other after he shot him with the shotgun the first time?
 "A He told me this, to make sure he was dead. I left from the truck, went to where he was laying on the ground and I could see his leg was tangled in a vine or something. That's what made him fall.
". . . .
"Q Did Mac tell you you'd have to finish anything?
 "A He told me to finish, go make sure he was dead. That's all he said. . . . We got — And after that, we got in the truck."
Lawhorn, 581 So.2d at 1162-63.
 I.
Lawhorn claims that the trial court erred in adopting the state's proposed findings of fact and conclusions of law in its order denying his petition for postconviction relief. The trial court did adopt verbatim the state's findings of fact and conclusions of law in its order denying relief. Lawhorn specifically asserts that to do so was error, because, he says, the findings regarding his trial counsel's *Page 978 
decision to waive closing argument during the penalty phase of trial are incorrect.
 "While the practice of adopting the state's proposed findings and conclusions is subject to criticism, the general rule is that even when the court adopts proposed findings verbatim, the findings are those of the court and may be reversed only if clearly erroneous. Anderson v. City of Bessemer City, N.C., 470 U.S. 564, 105 S.Ct. 1504, 84 L.Ed.2d 518
(1985); Hubbard v. State, 584 So.2d 895 (Ala.Cr.App. 1991); Weeks v. State, 568 So.2d 864 (Ala.Cr.App. 1989), cert. denied, [498] U.S. [882], 111 S.Ct. 230, 112 L.Ed.2d 184 (1990); Morrison v. State, 551 So.2d 435
(Ala.Cr.App.), cert. denied, 495 U.S. 911, 110 S.Ct. 1938, 109 L.Ed.2d 301 (1990)."
Bell v. State, 593 So.2d 123, 126 (Ala.Cr.App. 1991), cert. denied,593 So.2d 123 (Ala.), cert. denied, 504 U.S. 991, 112 S.Ct. 2981,119 L.Ed.2d 599 (1992).
Lawhorn contends that the following findings and conclusions by the trial court were in error:
 "Lawhorn also asserts that trial counsel failed to research pertinent law. The only evidence presented at the Rule 32 hearing about research concerned whether the district attorney could make a closing argument if the defense waived its closing argument. [Trial counsel] testified that he found a case before trial that supported his position that the district attorney could not argue if the defense waived its closing argument. Lawhorn contends that there were cases to the contrary which trial counsel should have found.
 "Trial counsel were not ineffective because they did not find the case the district attorney argued to the trial court. Trial counsel found a case which supported their position and presented it to the trial court. The fact that this Court ruled against counsel does not make them ineffective. Trial counsel's strategy was reasonable and trial counsel had caselaw to support their position, therefore, there was no deficient performance."
(R. 462-63.) (Emphasis added.)
Contrary to Lawhorn's assertion that trial counsel never found a case to support his position, the record indicates that counsel had found a case and had brought it to the trial court's attention. The record of the Rule 32 hearing reveals in pertinent part:
 "[Lawhorn's Rule 32 counsel]: Now, you as part of thinking about this had done some research, had you not, about whether you could prevent [the prosecutor] from arguing if you rested at the penalty phase; isn't that right?
 "[Lawhorn's trial counsel]: Yes, sir, we understood that to be the rules of evidence in Alabama.
 "[Lawhorn's Rule 32 counsel]: And you would come across the Shepherd case. There's a reference I think in your file somewhere that Shepherd is a case that discusses that issue?
"[Lawhorn's trial counsel]: Yes, sir.
 "[Lawhorn's Rule 32 counsel]: And had you reached a conclusion that if you rested without arguing, that as a matter of law [the prosecutor] could not argue?
 "[Lawhorn's trial counsel]: That's what we understood, yes, sir.
 "[Lawhorn's Rule 32 counsel]: And that's what you told Judge Sullivan?
"[Lawhorn's trial counsel]: Yes, sir."
(R. 51-52.)
Our review of trial counsel's testimony at the hearing supports the findings of the trial court. Counsel testified that he did find a case that supported his position and that he presented it to the trial court. The trial court, however, ruled against his interpretation of the case and, acting within its discretion, allowed the prosecutor to resume his closing argument. Based on trial counsel's testimony at the hearing, the proposed findings and conclusions present a fair and accurate statement of the facts presented to the trial court. *Page 979 
Additionally, the record reflects that the trial court was thoroughly familiar with the case. After reviewing the record in this case, we find no reason to doubt that the trial court's order denying Lawhorn postconviction relief represents the trial court's independent judgment and its considered conclusions. Therefore, the trial court's findings of fact and conclusions of law are supported by the evidence and are not clearly erroneous.
 II.
In his petition, Lawhorn presents numerous claims concerning the performance of his counsel, most concerning alleged acts and omissions of his counsel at trial and on appeal. He contends that as a result of counsel's alleged errors, he was denied the effective assistance of counsel guaranteed by the Sixth Amendment to the United States Constitution.
In order to prevail on a claim of ineffective assistance of counsel, a defendant must meet the two-pronged test articulated by the United States Supreme Court in Strickland v. Washington, 466 U.S. 668,104 S.Ct. 2052, 80 L.Ed.2d 674 (1984):
 "First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the `counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable."
466 U.S. at 687, 104 S.Ct. at 2064.
"The performance component outlined in Strickland is an objective one: that is, whether counsel's assistance, judged under `prevailing professional norms,' was `reasonable considering all the circumstances.'" Daniels v. State, 650 So.2d 544, 552 (Ala.Cr.App. 1994), cert. denied, 514 U.S. 1024, 115 S.Ct. 1375, 131 L.Ed.2d 230 (1995), quoting Strickland, 466 U.S. at 688, 104 S.Ct. at 2065. "A court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." Strickland, 466 U.S. at 690,104 S.Ct. at 2066.
In alleging ineffective assistance of counsel, the claimant has the burden of showing that his counsel's assistance was ineffective. Ex parte Baldwin, 456 So.2d 129 (Ala. 1984), aff'd, 472 U.S. 372,105 S.Ct. 2727, 86 L.Ed.2d 300 (1985). "Once a petitioner has identified the specific acts or omissions that he alleges were not the result of reasonable professional judgment on counsel's part, the court must determine whether those acts or omissions fall `outside the wide range of professionally competent assistance.' [Strickland,] 466 U.S. at 690,104 S.Ct. at 2066." Daniels, 650 So.2d at 552. When reviewing a claim of ineffective assistance of counsel, we indulge a strong presumption that counsel's conduct was appropriate and reasonable. Hallford v. State,629 So.2d 6 (Ala.Cr.App. 1992), cert. denied, 511 U.S. 1100,114 S.Ct. 1870, 128 L.Ed.2d 491 (1994); Luke v. State, 484 So.2d 531 (Ala.Cr.App. 1985). "This court must avoid using `hindsight' to evaluate the performance of counsel. We must evaluate all the circumstances surrounding the case at the time of counsel's actions before determining whether counsel rendered ineffective assistance." Hallford, 629 So.2d at 9. See also, e.g., Cartwright v. State, 645 So.2d 326 (Ala.Cr.App. 1994).
 "Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission *Page 980 
of counsel was unreasonable. A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action `might be considered sound trial strategy.' There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way."
Strickland, 466 U.S. at 689, 104 S.Ct. at 2065 (citations omitted). See Ex parte Lawley, 512 So.2d 1370, 1372 (Ala. 1987).
"Even if an attorney's performance is determined to be deficient, the petitioner is not entitled to relief unless he establishes that `there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.' [Strickland,] 466 U.S. at 694,104 S.Ct. at 2068." Daniels, 650 So.2d at 552.
 "When a defendant challenges a death sentence such as the one at issue in this case, the question is whether there is a reasonable probability that, absent the errors, the sentencer — including an appellate court, to the extent it independently reweighs the evidence — would have concluded that the balance of aggravating and mitigating circumstances did not warrant death."
Strickland, 466 U.S. at 697, 104 S.Ct. at 2069, quoted in Thompson v. State, 615 So.2d 129, 132 (Ala.Cr.App. 1992), cert. denied, 510 U.S. 976,114 S.Ct. 467, 126 L.Ed.2d 418 (1993).
In a Rule 32 proceeding, the petitioner has "the burden of pleading and proving by a preponderance of the evidence the facts necessary to entitle the petitioner to relief." Rule 32.3, Ala.R.Crim.P." See Fortenberry v. State, 659 So.2d 194 (Ala.Cr.App. 1994), cert. denied,516 U.S. 846, 116 S.Ct. 137, 133 L.Ed.2d 84 (1995); Wilson v. State,644 So.2d 1326 (Ala.Cr.App. 1994); and Elliott v. State, 601 So.2d 1118
(Ala.Cr.App. 1992).
Lawhorn's lead counsel at trial was Hank Fannin, an attorney with approximately 24 years of experience at the time of Lawhorn's 1989 trial. Before his appointment to Lawhorn's case, Fannin had represented two defendants charged with capital murder. Mark Nelson replaced Steve Giddens as Fannin's co-counsel after the trial court allowed Giddens to withdraw. Fannin and Nelson also represented Lawhorn on his direct appeal. In the way of general preparation for Lawhorn's trial, Fannin obtained and made use of materials from the Capital Representation Resource Center, experts on defending capital cases. Lawhorn called Fannin, Giddens, and Nelson to testify at the evidentiary hearing on his Rule 32 petition.
Fannin testified that in preparation for Lawhorn's trial he talked to numerous potential witnesses, including Lawhorn's mother, Shirley Hudson; his sister, Debra Lawhorn; Rhonda Peters, his juvenile probation officer/counselor; and Jerry Lawrence, his junior high school principal.
The trial court specifically found Fannin to be a credible witness at the evidentiary hearing and credited Fannin's accounts of his pretrial preparation and investigation. (C. 445.)
It was Fannin's opinion that the state's case against Lawhorn was compelling, in light of Lawhorn's confession.[2] In *Page 981 
addition to Lawhorn's confession, witnesses had seen Lawhorn argue with the victim the morning of the murder and in the area where the victim's body was found the afternoon of the murder. Because they believed at the time that an attempt to win an outright acquittal would be unavailing, Fannin, with the assistance of Giddens and later Nelson, developed a strategy to attempt to keep Lawhorn's confession out of evidence and to challenge venue in Talladega County. The trial court found that Lawhorn's trial counsel clearly presented these defenses at the guilt stage of Lawhorn's trial. (C. 12.)
The trial court summarized the presentation of Lawhorn's case at trial as follows:
 "Trial counsel talked to Lawhorn about his confession and filed a motion to suppress based on what Lawhorn told them about his confession. A hearing was held on the motion to suppress during Lawhorn's trial. The following witnesses testified at the suppression hearing: James Charles Lawhorn, Frankie Wallace, Ann Wallace, Jerry Studdard, Cathy Jones, and Billy Joe Pope. After these witnesses testified, the trial court found that the confession was voluntary and allowed it into evidence over defense counsel's objections. Trial counsel attempted to prove that venue was not [proper] in Talladega County through cross-examination of the State's witnesses.
 "Trial counsel did investigate, prepare and present a coherent theory of defense at the guilt stage of Lawhorn's trial and did focus on relevant defenses. The prosecution case against Lawhorn was overwhelming as trial counsel and Roger Appell (Lawhorn's expert attorney at the Rule 32 hearing) admitted. In fact, Roger Appell testified as follows at the Rule 32 hearing: `To be honest with you, I really can't fault Mr. Fannin for trying to come up with some kind of defense. There wasn't a whole lot to work with in this case.'
". . . .
 "Lawhorn failed to establish that he was prejudiced by trial counsel's guilt stage defense strategy. Trial counsel and Appell characterized the prosecution's case as to Lawhorn's guilt as being overwhelming. Their assessment of the strength of the prosecution case is correct because, given Lawhorn's confession and the other evidence supporting this confession, Lawhorn's guilt of the capital offense was shown beyond any doubt. Based on the strength of the prosecution's case, there is no reasonable probability that, but for trial counsel's defense strategy at the guilt stage, Lawhorn would have been found guilty of non-capital murder or acquitted."
(C. 446-48.)
In light of the record before us, we cannot say that Lawhorn's trial counsel failed to adequately prepare and adequately present a defense for Lawhorn during the guilt stage of the trial.
 A.
Lawhorn contends that his trial counsel was ineffective for failing to make a Batson[3] motion at trial and for failing to argue the Batson issue on appeal. Lawhorn and the victim in this case were white. In his brief to this court, Lawhorn argues that because the state struck 57% of the black veniremembers and only 29% of the white veniremembers, trial counsel should have made a Batson motion.
On cross-examination of Fannin at the Rule 32 hearing, the prosecutor addressed the Batson issue. The record indicates the following occurred:
 "[Prosecutor]: Did you make a Batson objection during this trial?
"[Fannin]: No, we did not.
 "[Prosecutor]: Had Powers v. Ohio, [499 U.S. 400
(1991)], been decided in April 1989?
"[Fannin]: It was my understanding that it had not been. *Page 982 
 "[Prosecutor]: So you didn't think that there was a Batson objection to be made in this case?
 "[Fannin]: We didn't think at that time it applied to white defendants."
(R. 72.)
In this case, Lawhorn was convicted on April 26, 1989; the Alabama Court of Criminal Appeals affirmed his conviction in September 1990 and the Alabama Supreme Court affirmed on April 11, 1991. The United States Supreme Court released its decision in Powers v. Ohio, 499 U.S. 400,111 S.Ct. 1364, 113 L.Ed.2d 411 (1991), which held that white defendants could raise a challenge based on Batson, on April 1, 1991.
Trial counsel cannot be held ineffective for failing to make a Batson challenge in a trial and in an appeal involving a white defendant when the trial and the appeal were conducted before the release of Powers v. Ohio. See Holladay v. State, 629 So.2d 673, 685-86 (Ala.Cr.App. 1992), cert. denied, 510 U.S. 1171, 114 S.Ct. 1208, 127 L.Ed.2d 555 (1994). Only Lawhorn's petition for certiorari review was pending when Powers was released. Appellate counsel did raise a Batson claim in its brief to the Alabama Supreme Court; after considering the claim, the Supreme Court held that it did not constitute grounds for reversal. See Ex parte Lawhorn, 581 So.2d at 1180-81.
Counsel is not ineffective for failing to forecast changes in the law. State v. Tarver, 629 So.2d 14, 18-19 (Ala.Cr.App. 1993). Therefore, Lawhorn's trial counsel was not ineffective for failing to raise this issue.
 B.
On appeal of the denial of his Rule 32 petition Lawhorn contends for the first time that his trial counsel was ineffective for failing to assert a Riverside[4] violation. In his reply brief, Lawhorn contends that he informed the trial court that oral testimony would not address certain issues, but that these issues were clearly presented in the record within the following claims for relief:
 "137 (b) Counsel failed to devote reasonable time and effort to consulting with the petitioner and others, researching pertinent law, and obtaining evidence through formal discovery or other means.
". . . .
 "137 (ii) Counsel failed to articulate state and federal constitutional challenges to the validity of the Alabama scheme of capital sentencing, on its face or as applied, even though the petitioner's trial was pervaded by constitutional error.
 "137 (jj) Counsel failed to raise and preserve numerous meritorious issues for appeal, including but not limited to various issues identified elsewhere in this petition.
". . . .
 "137 (oo) In addition, to the extent that counsel at trial and on appeal failed to raise, or did not adequately raise, any of the issues more fully described in the preceding sections of this petition, such failure or inadequacy was unreasonable and ineffective."
(C. 235-40.)
We find, however, that these claims are too vague and general to preserve a claim for relief on such a specific ground. Rule 32.6(b), Ala. R.Crim.P. Claims that are not raised in the Rule 32 petition and subject to the trial court's review cannot be raised on appeal from denial of the petition. Jackson v. State, 501 So.2d 542 (Ala.Cr.App. 1986), cert. denied, 483 U.S. 1010, 107 S.Ct. 3242, 97 L.Ed.2d 746 (1987); Boatwright v. State, 494 So.2d 929 (Ala.Cr.App. 1986); McLeod v. State, 415 So.2d 1232
(Ala.Cr.App. 1982). The procedural bars set forth in Rule 32, *Page 983 
Ala.R.Crim. P., apply in death cases. Tarver, 629 So.2d at 19. See Horsley v. State, 675 So.2d 908 (Ala.Cr.App. 1996); Grayson v. State, 675 So.2d 516 (Ala.Cr.App. 1995), cert. denied,519 U.S. 934, 117 S.Ct. 309 (1996); Brownlee v. State,666 So.2d 91, 93 (Ala.Cr.App. 1995); Cade v. State, 629 So.2d 38
(Ala.Cr.App. 1993), cert. denied, 511 U.S. 1046, 114 S.Ct. 1579,128 L.Ed.2d 221 (1994). Furthermore, the plain error rule does not apply in collateral review proceedings. Neelley v. State, 642 So.2d 494,496 (Ala.Cr.App. 1993), cert. quashed, 642 So.2d 510 (Ala. 1994), cert. denied, 514 U.S. 1005, 115 S.Ct. 1316, 131 L.Ed.2d 197 (1995).
 C.
Lawhorn contends that his trial counsel was ineffective because counsel allegedly failed to lay a proper foundation by which the trial court could rule that Lawhorn's second confession was not voluntary.
This court addressed the issue of Lawhorn's claim of involuntariness with regard to his statement in Lawhorn v. State, where it stated:
 "In deciding the merits of appellant's claim of involuntariness, we look to the totality of the circumstances to determine whether the prosecution met its burden of establishing voluntariness and a Miranda predicate. Bui v. State, 551 So.2d 1094, 1107
(Ala.Cr.App. 1988), aff'd, 551 So.2d 1125 (Ala. 1989). The prosecution met this burden with abundant, credible evidence. . . . After reviewing the circumstances, we conclude that `[appellant] made an independent and informed choice of his own free will, that he possessed the capability to do so, and that his will was not overborne by pressures and circumstances swirling around him,' id. at 1108."
581 So.2d at 1167.
In his Rule 32 petition, Lawhorn contends that his trial counsel did not adequately argue that, because the police denied him access to counsel, family, or friends, his waiver of his right to counsel was not voluntary. However, because we reviewed the "totality of the circumstances" in our determination and found the statement to be voluntary, we are not persuaded that such an argument by trial counsel would have made a difference. Furthermore, because we have found that admitting the statement was not error, Lawhorn fails to satisfy the requisites of Strickland. We agree with the trial court's ruling that Lawhorn's trial counsel did not render ineffective assistance of counsel in this regard.
 D.
Lawhorn contends that his trial counsel failed to adequately investigate his history of drug and alcohol use, especially his drug use during the time of the murder. He further contends that this failure to investigate his drug and alcohol use prevented a jury charge on involuntary intoxication, and that therefore, his trial counsel was ineffective.
Lawhorn maintains that his trial counsel received what amounted to constructive notice of his drug and alcohol use from the bizarre nature of the offense. The record, however, indicates that Lawhorn's trial counsel hired an investigator and did conduct an investigation into Lawhorn's family and background. At the evidentiary hearing, Lawhorn's trial counsel testified that he was aware that Lawhorn had smoked marijuana on occasion, but that there was no indication that Lawhorn's drug usage played a significant role in commission of the offense. He further elaborated that Lawhorn had denied any serious use of any drug. Lawhorn testified on his own behalf at the evidentiary hearing. He testified that he had smoked some marijuana and injected himself with Dilaudid on the morning of the murder. He further testified that although he was high when he was waiting in the woods for the victim, he was not "messed up bad." He also stated that the drugs allegedly in his body did not slow him down when he was chasing the victim through the woods. (C. 455.) *Page 984 
While counsel has a duty to investigate for evidence favorable to the defendant, "this duty only requires a reasonable investigation." Singleton v. Thigpen, 847 F.2d 668, 669 (11th Cir. 1988), cert. denied,488 U.S. 1019, 109 S.Ct. 822, 102 L.Ed.2d 812 (1989) (emphasis added). See Strickland, 466 U.S. at 691, 104 S.Ct. at 2066; Morrison v. State,551 So.2d 435 (Ala.Cr.App. 1989), cert. denied, 495 U.S. 911,110 S.Ct. 1938, 109 L.Ed.2d 301 (1990). Counsel's obligation is to conduct a "substantial investigation into each of the plausible lines of defense." Strickland, 466 U.S. at 681, 104 S.Ct. at 2061 (emphasis added). "A substantial investigation is just what the term implies; it does not demand that counsel discover every shred of evidence but that a reasonable inquiry into all plausible defenses be made." Id.,466 U.S. at 686, 104 S.Ct. at 2063. "The reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions. Counsel's actions are usually based, quite properly, on informed strategic choices made by the defendant and on information supplied by the defendant. In particular, what investigation decisions are reasonable depends critically on such information." Id.,466 U.S. at 691, 104 S.Ct. at 2066 (emphasis added).
There is nothing in the record to suggest that Lawhorn's trial counsel ignored matters that should reasonably have alerted him to the value of further investigating Lawhorn's alleged drug and alcohol use.
In its order denying Lawhorn's petition, the trial court found:
 "Fannin also filed a motion for funds to employ an investigator. The trial court granted this motion and appointed Jack Matson to be the investigator. Fannin testified that he wanted an investigator to investigate Lawhorn's background and family. The purpose of this investigation was to present evidence at the penalty phase of the trial. Matson gave Fannin a report from his investigation. There was nothing significant in this report about alcohol or drug abuse.
 "Fannin also testified that his client never told him that he had a drug or alcohol problem. Fannin testified that he had no other indication from his investigation that Lawhorn had a drug or alcohol problem. Giddens also testified that Lawhorn never talked about a drug or alcohol problem.
 ". . . There was nothing significant before trial counsel which indicated that Lawhorn had an alcohol or drug problem."
(R. 466.)
The trial court specifically found that Lawhorn's counsel did an excellent job of investigating Lawhorn's background and that there was no indication of an alcohol or drug problem. We will not say that the actions of counsel, in failing to conduct additional investigations, were unreasonable under the circumstances.
In addition, Lawhorn has failed to establish any prejudice in this regard. He makes no convincing showing that evidence beneficial to his defense would have been forthcoming had trial counsel investigated further, especially in light of his admission that the drugs did not "mess" him up "bad." Consequently, he has not established that the outcome of the trial probably would have been different had counsel acted differently. See Singleton, supra, 847 F.2d 668 (there was no showing of prejudice due to allegedly inadequate investigation by trial counsel where habeas petitioner failed to proffer the type of mitigating evidence that would have been found had trial counsel conducted further investigation).
We agree with the trial court's ruling that trial counsel did not render ineffective assistance by failing to further investigate Lawhorn's background or prepare witnesses.
Based on our review of the record, we find that the circuit court was correct in *Page 985 
finding that there was no merit to this contention.
 E.
Lawhorn contends that his trial counsel rendered ineffective assistance in failing to object to the trial court's instruction on reasonable doubt. Lawhorn alleges that the trial court's jury instructions on reasonable doubt allowed the jury to find him guilty on a degree of proof below that required by the Due Process Clause. In this regard, he contended that his counsel was ineffective because it failed to make a Cage v. Louisiana, 498 U.S. 39, 111 S.Ct. 328, 112 L.Ed.2d 339
(1990), objection to the instructions on reasonable doubt at trial and failed to argue Cage on direct appeal.
In Cage, the United States Supreme Court found that if a trial court defined "reasonable doubt" by using the terms "grave uncertainty," "actual substantial doubt," and "moral certainty," a reasonable juror could interpret the instructions to mean that a lesser degree of proof is needed to convict than is required by the due process clause. In the present case, Lawhorn bases all of his claims for relief on the following instructions by the trial court:
 "Now, you'll want to know what reasonable doubt is. When I say the State is under the burden of proving his guilt beyond a reasonable doubt and to a moral certainty, that does not mean that the State must prove an alleged crime beyond every imaginable or speculative doubt or beyond all possibility of mistake, because that would be impossible. A reasonable doubt means an actual substantial doubt arising out of the testimony in a case, or it could arise from a lack of testimony in a case. It is a doubt for which a reason can be assigned, and the expression `to a moral certainty' means practically the same thing as `beyond a reasonable doubt,' because if you are convinced to a point where you no longer have a reasonable doubt, then you are convinced to a moral certainty."
(Trial Record Exhibit Vol. 3, R. 485.)
Here, the trial court's "reasonable doubt" instructions were similar to the instructions given in Burton v. State, 651 So.2d 641 (Ala.Cr.App. 1993), aff'd, 651 So.2d 659 (Ala. 1994), cert. denied, 514 U.S. 1115,115 S.Ct. 1973, 131 L.Ed.2d 862 (1995), and in Smith v. State, 588 So.2d 561
(Ala.Cr.App. 1991), and found by this court not to violate Cage. While the trial court used the terms "actual substantial doubt" and "moral certainty" in its instructions, it did not also use the term "grave uncertainty" in defining reasonable doubt. It was the use of all three terms that the Supreme Court found unconstitutional in Cage. See Gaskins v. McKellar, 500 U.S. 961, 111 S.Ct. 2277, 114 L.Ed.2d 728 (1991); Coral v. State, 628 So.2d 954 (Ala.Cr.App. 1992), aff'd, 628 So.2d 1004 (Ala. 1993), cert. denied, 511 U.S. 1012, 114 S.Ct. 1387, 128 L.Ed.2d 61
(1994). This court has held that use of some, but not all, of the terms examined in Cage does not necessarily constitute reversible error. Haney v. State, 603 So.2d 368 (Ala.Cr.App. 1991), aff'd, 603 So.2d 412 (Ala. 1992), cert. denied, 507 U.S. 925, 113 S.Ct. 1297, 122 L.Ed.2d 687
(1993).
In a recent revisitation of Cage, the United States Supreme Court held that, while it did not condone the use of the Cage terminology in reasonable doubt instructions, the use of such terminology does not automatically render instructions unconstitutional if "taken as a whole, the instructions correctly conveyed the concept of reasonable doubt to the jury." Victor v. Nebraska, 511 U.S. 1, 114 S.Ct. 1239,127 L.Ed.2d 583 (1994), quoting Holland v. United States, 348 U.S. 121, 140,75 S.Ct. 127, 137, 99 L.Ed. 150 (1954). See, e.g, Haney, supra, 603 So.2d at 411 (jury instruction is to be construed in the context of the charges as a whole). While the trial court's instructions in the present case contained some of the questionable Cage terminology, we find that the instructions, *Page 986 
"taken as a whole," thoroughly explained reasonable doubt and satisfied Victor and Cage.
After considering the trial court's entire jury instruction, we find that it was not reasonably likely that the jury would have interpreted the trial court's instructions to indicate that the doubt necessary for acquittal was anything other than a reasonable one. Thus, there was no Cage violation in the trial court's instructions on reasonable doubt.
Because the trial court's instructions did not impermissibly allow the jury to find Lawhorn guilty on a degree of proof below that required by the Due Process Clause, Lawhorn has not shown that his counsel was ineffective in not objecting to the court's instructions on this ground. Moreover, Lawhorn's case was tried in April 1989, some 20 months before the opinion in Cage was released (December 13, 1990). We cannot say that trial counsel's performance was deficient for failing to forecast changes in the law. Hallford, 629 So.2d at 11.
Lawhorn's brief on direct appeal was filed in January, 1990, and this court affirmed his conviction on September 21, 1990 — several months before the release of Cage. His petition for certiorari review was granted by the Alabama Supreme Court, which affirmed the conviction on April 11, 1991. Thus, only Lawhorn's petition for certiorari review was actually pending when Cage was released. Appellate counsel did raise a Cage claim in its brief to the Alabama Supreme Court; after considering the claim, the Supreme Court held that it did not constitute grounds for reversal. See Ex parte Lawhorn, 581 So.2d at 1180. Therefore, we cannot find that Lawhorn's trial or appellate counsel rendered ineffective assistance because, as we have said, there would have been no merit to a Cage claim.
 F.
Lawhorn claims that his trial counsel rendered ineffective assistance, because, he says, his counsel did not adequately prepare him and other witnesses for the penalty phase of trial. Specifically, he claims that he and his witnesses, with better preparation from trial counsel, could have presented "more favorable detailed testimony about his background." At the Rule 32 evidentiary hearing, several family members of Lawhorn testified on his behalf. The trial court, in considering Lawhorn's petition, stated:
 "[T]he testimony of these witnesses was cumulative of the testimony presented at the penalty phase of the trial. Trial counsel's performance was not `outside the wide range of professionally competent assistance' simply because they failed to present evidence that would have been cumulative of other evidence presented at trial. See, Waters v. Thomas, 46 F.3d 1506, 1517-1518 (11th Cir. 1995). The Constitution does not guarantee a perfect trial but rather guarantees a fair trial and a competent attorney. Engle v. Issac [Isaac], 456 U.S. 107, 134, [102 S.Ct. 1558, 1575, 71 L.Ed.2d 783, 804] (1982); Waters v. Thomas, supra. In this case, Lawhorn was given a fair trial and he was represented by competent attorneys."
(C. 456.)
We too have compared the testimony presented at Lawhorn's trial and the testimony presented at the Rule 32 hearing and find that the evidence presented was essentially the same. While Lawhorn urges us to believe that more graphic details elicited during the penalty phase may have had an influential impact on the jury, this is pure speculation, especially considering the fact that Lawhorn, himself, and his mother during his trial, begged for mercy. Lawhorn has not shown that his counsel's performance was deficient in this regard; nor has he shown that he was prejudiced by his counsel's performance.
 G.
Lawhorn further contends that his trial counsel was ineffective because counsel failed to make a closing argument of *Page 987 
any kind at the penalty phase of the trial. At trial, Lawhorn's counsel attempted to prevent the prosecutor from further argument. In its order denying Lawhorn's petition, the trial court stated:
 "At the Rule 32 hearing, Fannin testified that he made a strategic decision that he would not make a closing argument during the penalty phase of the trial. It was Fannin's understanding that if he waived closing argument that the district attorney would not be allowed to argue. Fannin did not want to give the district attorney an opportunity on rebuttal to get up and point at Lawhorn and call him a cold-blooded murderer and back-shooter. Fannin wanted to prevent the district attorney from inflaming the minds of the jury.
 "At the Rule 32 hearing, Lawhorn alleged that when trial counsel waived closing argument he lost the opportunity to ask the jury to spare his client's life. While it is true that trial counsel did not ask the jury to spare Lawhorn's life, both Lawhorn himself and his mother asked the jury to spare his life. This Court finds that a jury is more influenced by pleas from family members or defendant's that a life be spared rather than pleas from trial counsel.
 "Trial counsel's decision to waive his closing argument did not render his performance deficient because it was a strategic decision to keep the district attorney from making a closing argument. This Court has watched district attorney Rumsey on many occasions during closing argument. He is powerful and effective during closing argument. Based on this Court's experience, it is not an unusual tactical decision in Talladega County for attorneys to waive closing argument to prevent district attorney Rumsey from making a closing argument. . . .
 "Further, Lawhorn failed to prove at the Rule 32 hearing that he was prejudiced by trial counsel's decision to waive closing argument. This Court finds that trial counsel's decision to waive closing argument did not prejudice him. Trial counsel did not present a complicated case in mitigation that needed to be explained to the jury. Trial counsel presented Lawhorn's family background and pleas for mercy in mitigation. Thus, closing argument on this mitigation was not necessary. Further, this was a horrible crime and the jury would not have been swayed by a closing argument considering the facts of this case. . . .
". . . .
 "This is not a case where the jury would have accepted a plea for mercy or would have found any mitigating evidence that outweighed the aggravating circumstances presented. Thus, Lawhorn failed to establish at the Rule 32 hearing a reasonable probability that but for trial counsel's failure to make a closing argument during the penalty phase of trial that he would have received a sentence other than death."
(C. 489-92.)
In Floyd v. State, 571 So.2d 1221 (Ala.Cr.App. 1989), rev'd on other grounds, 571 So.2d 1234 (Ala. 1990), we held that it was not ineffective assistance of counsel when defense counsel made a strategic decision to waive closing arguments in order to deprive the prosecution of its main opportunity to argue to the jury. Similar to the situation in Floyd, Lawhorn's trial counsel did not offer closing argument in an attempt to deprive the prosecution of labelling Lawhorn a "cold-blooded murderer and a back-shooter." "This is exactly the sort of strategic decision which the United States Supreme Court has held to be virtually unchallengeable in Strickland v. Washington. 466 U.S. at 690,104 S.Ct. at 2065." Floyd, 571 So.2d at 1227. We agree with the trial court that in this situation with these particular facts, closing argument by defense counsel would have had little impact.
Furthermore, Lawhorn's suggestion that closing argument could have articulated the mitigating circumstance — substantial domination — which may have warranted a *Page 988 
recommendation of life imprisonment without parole is unpersuasive. In view of the overwhelming evidence against Lawhorn, it is conceivable that such argument by trial counsel would have merely redirected the jury's attention to the egregious nature of this crime, having a detrimental effect, instead of leaving a favorable impression on the minds of the jurors. See Waters v. Zant, 979 F.2d 1473,1488-89, 1497 (11th Cir. 1992) (holding that trial counsel rendered ineffective assistance because during closing argument he portrayed the defendant as a specimen to be studied); King v. Strickland, 748 F.2d 1462, 1464 (11th Cir. 1984) (weak closing argument which emphasized reprehensible nature of crime and fact that counsel reluctantly represented defendant warranted reversal of death sentence and remand for sentencing). Therefore, we find that Lawhorn has failed to meet the requisites of Strickland as to this claim.
 H.
Lawhorn contends that his trial counsel rendered ineffective assistance in failing to have him examined by an expert psychologist. With regard to this claim, the trial court found:
 "This claim of ineffective assistance is without merit. On February 22, 1989, trial counsel filed a motion for funds to employ a psychiatrist. At the Rule 32 hearing, Fannin testified that he filed this motion because it is a good idea to have a psychiatrist in capital cases to present mitigating circumstances. Fannin filed this motion even though Lawhorn did not appear to be insane and was not delusional or hallucinating. Fannin testified at the Rule 32 hearing that the court granted his motion and ordered that someone from the Talladega Mental Health Center perform the evaluation, which was the standard practice in this circuit at the time. Fannin testified that had the Talladega Mental Health Center found a problem with Lawhorn that he probably would have been taken to the Taylor Hardin Secure Medical Facility for further evaluation. Fannin received a copy of the confidential intellectual assessment from Gary Garner. Fannin testified that there was nothing in this assessment which could have been used as mitigation."
". . . .
 ". . . [T]rial counsel clearly pursued expert assistance and testimony for use at Lawhorn's trial. There was nothing significant before trial counsel which indicated that Lawhorn had an alcohol or drug problem. There was no deficient performance by counsel because counsel did not seek more psychiatric assistance than was allowed by the trial court. Further, Lawhorn has failed to prove prejudice from this alleged failure."
(C. 466-67.) (Emphasis added.)
The trial court also noted that Fannin had hired an investigator who found nothing significant to report about alcohol and drug use. Additionally, the trial court noted that Lawhorn did not reveal to his trial counsel that he had a drug or alcohol problem.
While counsel has a duty to investigate for evidence favorable to the defendant, "this duty only requires a reasonable investigation." Singleton v. Thigpen, 847 F.2d at 669 (emphasis added). Counsel's obligation is to conduct a "substantial investigation into each of several plausible lines of defense." Strickland, 466 U.S. at 681,104 S.Ct. at 2061 (emphasis added). Furthermore, the reasonableness of trial counsel's investigation may be determined by information provided by the defendant. Id., 466 U.S. at 691, 104 S.Ct. at 2066.
From the evidence presented to the trial court, we agree with the trial court's conclusion that Lawhorn's trial counsel, based on the information provided to them, adequately pursued expert psychiatric assistance. (C. 466.) See Floyd v. State, 571 So.2d at 1229 (holding that trial counsel's decision not to pursue a defense, which upon investigation appears fruitless, was reasonable and did not render his performance deficient). *Page 989 
Lawhorn appears to suggest that the testimony from a psychiatrist would have been particularly helpful to support a jury charge on voluntary intoxication and to present a mitigating circumstance. A review of the record, however, reveals that Lawhorn's trial counsel did pursue an investigation (including an evaluation by Talladega Mental Health Center and an investigation by Jack Matson, a hired private investigator) into Lawhorn's background, including his drug and alcohol use, but that no indication of any significant drug or alcohol abuse at the time of offense, which would provide grounds for such a defense or a finding of a mitigating circumstance, was found. Therefore, Lawhorn has failed to demonstrate that there was a reasonable probability that a psychiatric expert would have assisted his defense. See Dubose v. State,662 So.2d 1156, 1182 (Ala.Cr.App. 1993), aff'd, 662 So.2d 1189 (Ala. 1995). We cannot hold Lawhorn's trial counsel accountable for information that counsel tried to seek, but that was unavailable, and even denied by Lawhorn, at the time of trial. Therefore, Lawhorn has failed to establish a reasonable probability that but for counsel's failure to pursue psychiatric expert assistance the outcome of his trial would have been different.
 I.
Lawhorn contends that his trial counsel rendered ineffective assistance when, during cross-examination by the prosecution during the penalty phase of his trial, his counsel did not object when the prosecutor asked about the victim's alleged pleading for his life. The record of the trial relates the following:
 "[Prosecutor]: Did you understand him when he was out there hollering after he was shot?
"[Lawhorn]: Sir?
 "[Prosecutor]: Did you understand what he was crying and hollering after he was shot out there?
"[Lawhorn]: No.
 "[Prosecutor]: Was he begging for you not to shoot him anymore?
"[Lawhorn]: Do what?
 "[Prosecutor]: Was he begging for you not to shoot him any more after he was shot the first time out there?
"[Lawhorn]: (Shaking head)."
(Trial transcript, R. 556-57.)
Lawhorn contends that this line of questioning suggested that the victim pleaded for his life, yet there was no such evidence in the record. At Lawhorn's Rule 32 hearing, his counsel questioned the prosecutor about the line of questioning. The prosecutor responded as follows:
 "I [will] just simply say this, that the evidence in the case was that he was running down the road, that he was shot, he continued to run, he was hollering the whole time, and that his feet were tangled up in the brush. And I believe your client went over then and shot him after he was laying down. And I think that's a reasonable basis to assume that a guy who has been shot several times would be asking and pleading for his life."
(R. 128.) The trial court found that the prosecutor had a reasonable basis from the evidence to support this line of questioning. Lawhorn presented no evidence to the contrary. Therefore, based on the record, we cannot say that Lawhorn's counsel was ineffective for failing to object to a line of questioning based on reasonable, legitimate inferences from the evidence. See Coral v. State, 628 So.2d 954, 958
(Ala.Cr.App. 1992), aff'd, 628 So.2d 1004 (Ala. 1993), cert. denied,511 U.S. 1012, 114 S.Ct. 1387, 128 L.Ed.2d 61 (1994).
Furthermore, a review of the entire cross-examination of Lawhorn does not indicate that this line of questioning necessarily created an inference that he had ignored the victim's pleas for his life. The record reveals that the prosecutor, during his cross-examination, questioned Lawhorn about the mental capacity and speech impediment of the victim. Lawhorn clearly stated that he could not understand what the victim was "hollering" at the time of the offense. We cannot say *Page 990 
that counsel's failure to object to the allegedly misleading questions fell outside "the wide range of reasonable professional assistance." Strickland v. Washington, 466 U.S. 668, 689, 104 S.Ct. 2052,80 L.Ed.2d 674 (1984). "Every missed opportunity for an objection does not constitute ineffective assistance. On occasion, in fact, circumstances suggest silence on the part of counsel." Black v. State, 680 So.2d 942,945 (Ala.Cr.App. 1995). Nor can we say that Lawhorn has shown, as he must, that a different outcome of his trial probably would have resulted had his counsel objected to the matters in question. Strickland,466 U.S. at 689; Ex parte Lawley, 512 So.2d 1370, 1372 (Ala. 1987).
 J.
Lawhorn next argues that his counsel was ineffective because he failed to object to the trial court's jury instruction concerning the aggravating circumstance that the murder was "especially heinous, atrocious, or cruel" when compared to other capital offenses. This court held in Lawhorn v. State that the trial court's charge was erroneous because it did not contain a limiting definition of the "especially heinous, atrocious, or cruel" aggravating circumstance. In addition, we found that although Lawhorn's death sentence was based in part on improperly defined aggravating circumstances, the error was harmless. We stated:
 "There is no question, at all, that, had the jury been properly instructed, it would still have returned a recommendation of death because the facts presented to the jury established, beyond any doubt, that this crime was especially heinous, atrocious, or cruel when compared to other capital offenses. The evidence is unconflicting that appellant directly participated in a conscienceless, pitiless, and torturous murder. Berry's [the victim's] last minutes were obviously filled with terror, fear, and knowledge that his death was imminent, and he experienced a high degree of prolonged pain before his death. All of this was accomplished by appellant with complete indifference — complete indifference to Berry's pain and terror and complete indifference to the value of human life, which he found to be worth $50. Clearly, this evidence sets this crime apart for the degree of heinousness, atrociousness, and cruelty of this offense exceeds that which would be common to all capital offenses. By any standard acceptable to civilized society, this crime was outrageously wicked and shockingly evil. In fact, appellant admitted, during the sentencing phase, that as the victim lay entangled in the underbrush and unable to talk, but gurgling, he repeatedly shot the victim and, at the time, did not care whether the victim died or not."
581 So.2d at 1177. Based on our holding on direct appeal, we cannot find that Lawhorn's trial counsel was ineffective for not objecting to the jury charge.[5] We specifically found that "the jury's improper consideration of this aggravating circumstance and possibly improper consideration by the trial court did not render appellant's sentencing fundamentally unfair." Lawhorn, 581 So.2d at 1177. Therefore, even though Lawhorn's counsel did not object, Lawhorn was not prejudiced.
Additionally, Lawhorn failed to present facts to show that further pursuit of this issue by his trial counsel would have been fruitful. We are not persuaded by Lawhorn's argument that his trial counsel was ineffective for failing to inform the trial court that in neither of the trials of *Page 991 
Lawhorn's codefendants had the crime been found to be "especially heinous, atrocious, or cruel." Alabama law is well established that "the emphasis is on the manner of the killing, not on the defendant's actual participation." Ex parte Bankhead, 585 So.2d 112,125 (Ala. 1991). Here, we found the murder was conducted with complete indifference to pain, suffering, and the value of human life, and was conducted for a mere $50. Lawhorn admitted that the victim was defenseless, and yet he repeatedly shot him. See Lawhorn, 581 So.2d at 1177.
We further note that "[t]he constitution permits qualitative differences in meting out punishment and there is no requirement that two persons convicted of the same offense receive identical sentences." Williams v. Illinois, 399 U.S. 235, 243, 90 S.Ct. 2018, 26 L.Ed.2d 586
(1970). We find that the same analysis applies and that there is no requirement that in different trials with different defendants, albeit involving the same crime, the capital offense committed by one defendant if found to be "heinous, atrocious, or cruel," must be found to be so in another participant's trial. Therefore, Lawhorn has not shown that his counsel's performance was deficient in this regard; nor has he shown that he was prejudiced by his counsel's performance. We agree with the trial court's ruling that trial counsel did not render ineffective assistance by failing to object to the trial court's instruction.
 K.
Finally, Lawhorn contends that his trial counsel rendered ineffective assistance, because, he says, his trial counsel did not adequately object to and respond to the presentence investigation report.[6]
The trial court made the following observations, while addressing the merits of this claim:
 "At the Rule 32 hearing, Fannin testified that he received the pre-sentence report on the day before or the day of sentencing. Fannin read the report and discussed the report with Lawhorn. Fannin did not recall whether there was anything in the report that he did not agree with. Fannin testified that there was nothing in the personal/social history in the pre-sentence report that he disagreed with. Fannin pointed out that the basis of the probation officer's statement that `adjustment during adolescence was normal' was from conversations with Lawhorn's mother and sister.
 "The evidence at the Rule 32 hearing revealed that counsel read and reviewed the pre-sentence report. Lawhorn's attorneys presented no evidence at the Rule 32 hearing as to why counsel should have objected to this statement, especially where the statement was from conversations with Lawhorn's mother and sister. Counsel's failure to object to this statement in the pre-sentence report does not render trial counsel's performance deficient. Further, Lawhorn presented no evidence at the Rule 32 hearing of how objecting to this statement would have affected the outcome of the sentencing. Lawhorn failed to prove prejudice."
(C. 437.)
We have reviewed the record and we agree with the trial court's findings. As this court observed in Stringfellow v. State, 485 So.2d 1238,1243 (Ala.Cr.App. 1986), "`effectiveness of counsel does not lend itself to measurement by picking through the transcript and counting the places where objections might be made.'" We agree with the trial court's ruling that Lawhorn failed to present any evidence in support of this allegation and that his counsel's performance has not been shown to be deficient with regard to this matter. "In a challenge to the imposition *Page 992 
of a death sentence, the prejudice prong of the Strickland inquiry focuses on whether `the sentencer . . . would have concluded that the balance of aggravating and mitigating circumstances did not warrant death." Stevens v. Zant, 968 F.2d 1076, 1081 (11th Cir. 1992), quoted in Daniels v. State, 650 So.2d 544, 568 (Ala.Cr.App. 1994), cert. denied,514 U.S. 1024, 115 S.Ct. 1375, 131 L.Ed.2d 230 (1995).
 III.
The following claims of ineffective assistance of counsel were raised by Lawhorn in his Rule 32 petition and were addressed by the trial court in its order, but were not raised on appeal:
1. Lawhorn claims that his trial counsel failed to investigate, to prepare, and to present a coherent theory of defense at the guilt-innocence phase of the trial, or to investigate, prepare, and present a coherent theory of mitigation at the penalty phase.
2. Lawhorn claims that his trial counsel failed to devote reasonable time and effort to consulting with the petitioner and others, to researching pertinent law, and to obtaining evidence through formal discovery.
3. Lawhorn claims that his trial counsel failed to pursue, or that he inadequately pursued, the petitioner's right to obtain evidence from the prosecution.
4. Lawhorn claims that his trial counsel failed to identify, to investigate, and to interview the state's key witnesses before trial and to adequately cross-examine them during trial.
5. Lawhorn claims that his trial counsel failed to develop an effective plea bargain strategy to avoid risk of the death penalty.
6. Lawhorn claims that his trial counsel failed to file a memorandum of law or to make any oral argument concerning the motion for a change of venue, despite what he says was highly prejudicial and inflammatory pretrial publicity.
7. Lawhorn claims that his trial counsel failed to present motions in limine and other pretrial motions in support of Lawhorn's defense.
8. Lawhorn claims that his trial counsel failed to object to Rod Giddens's being a member of the prosecution team despite the fact that Giddens's brother, Steve Giddens, had appeared for Lawhorn.
9. Lawhorn claims that his trial counsel failed to seek individual voir dire of veniremembers, to request detailed information on prospective jurors possessed by the prosecution, to conduct an adequate voir dire of the venire, or to make reasonable use of available challenges or preemptory strikes to ensure a fair and impartial jury. Trial counsel also failed to object to allegedly improper and misleading comments by the prosecutor and the court during voir dire.
10. Lawhorn claims that his trial counsel rendered ineffective assistance because, he says, counsel failed to focus on relevant issues in Lawhorn's defense and instead spent an unreasonable amount of time focusing on irrelevant issues such as where the body of the victim was found.
11. Lawhorn claims that his trial counsel failed to adequately prepare for opening and closing statements in both phases of the trial and that counsel made grossly damaging statements concerning Lawhorn's defense during arguments.
12. Lawhorn claims that his trial counsel failed to object, or that counsel objected inadequately, to the introduction of other improper, inflammatory, and prejudicial evidence at the guilt-innocence and sentencing phases.
13. Lawhorn claims that his trial counsel failed to object, or that counsel objected inadequately, to what he says was the prosecution's continual and flagrantly improper leading of witnesses on direct examination, as well as other improper prosecutorial conduct and argument before and during trial. *Page 993 
14. Lawhorn claims that his trial counsel failed to consider, to investigate, and to present available evidence and argument to support a defense that Lawhorn did not commit the charged capital offense. Counsel also failed to request proper jury instructions regarding such a defense or to object to the improper and inadequate instructions given.
15. Lawhorn claims that his trial counsel failed to request or to ensure the transcription of the pretrial proceedings.
16. Lawhorn claims that his trial counsel completely failed to investigate and to develop evidence relating to mitigating circumstances for use at the guilt-innocence and penalty phases of trial, even though such mitigating evidence was available.
17. Lawhorn claims that his trial counsel failed to frame and to articulate a theory of mitigation to present at the guilt-innocence and penalty phases.
18. Lawhorn claims that his trial counsel failed to move for a continuance to prepare for the penalty phase.
19. Lawhorn claims that his trial counsel failed to consult, or that counsel consulted inadequately, with Lawhorn on his right to testify at the guilt-innocence phase, as well as on his right to testify at the penalty phase after not having testified at the guilt-innocence phase.
20. Lawhorn claims that his trial counsel failed to adequately prepare Lawhorn and other witnesses for the sentencing phase of the trial.
21. Lawhorn claims that his trial counsel failed to adequately interview lay witnesses and otherwise to investigate Lawhorn's background and character, even though such information was available and would have enabled counsel to present a compelling case in mitigation.
22. Lawhorn claims that his trial counsel failed to respond to the highly unfavorable report submitted by the Alabama probation and parole board, which was filed with the court before sentencing.
23. Lawhorn claims that his trial counsel failed to direct attention at the penalty phase to information in the record that would support the finding of mitigating circumstances.
24. Lawhorn claims that his trial counsel failed to zealously advocate his interests at the penalty phase.
25. Lawhorn claims that his trial counsel failed to submit proposed instructions to the jury at the penalty phase, or to object to the instructions given, even though those instructions contained numerous errors and omissions that he argues were highly prejudicial to the defense.
26. Lawhorn claims that his trial counsel failed to adequately object and otherwise to respond to the presentence investigation report received by the court, which was replete with what he calls unfairly prejudicial and otherwise objectionable material.
27. Lawhorn claims that his trial counsel inadequately presented evidence at the sentencing hearing before the jury, inadequately prepared Lawhorn for the sentencing hearing before the judge, and offered no argument and made no reasonable efforts to persuade the judge not to accept the jury's sentencing recommendation.
28. Lawhorn claims that his trial counsel failed to articulate state and federal constitutional challenges to the validity of the Alabama capital sentencing scheme, on its face or as applied, even though, he says, Lawhorn's trial was pervaded by constitutional error.
29. Lawhorn claims that his trial counsel failed to raise and to preserve numerous meritorious issues for appeal, including, but not limited to, various issues identified elsewhere in his petition.
30. Lawhorn claims that his counsel failed to provide effective assistance of counsel on appeal to the Alabama Court of Criminal Appeals. Specifically, he claims counsel failed to brief numerous meritorious issues on appeal, including, but not limited to, various issues identified elsewhere in his petition. *Page 994 
31. Lawhorn claims that his counsel failed to provide an effective argument at the Alabama Supreme Court.
32. Lawhorn claims that his trial counsel failed to provide effective assistance of counsel at each and every phase of counsel's representation of Lawhorn.
33. Lawhorn claims that he was denied effective assistance of counsel at trial and on appeal by the insufficient funding provided by the State of Alabama for the compensation of the capital defense attorneys and their expenses.
We will not review the issues listed above. "`"[A]llegations . . . not expressly argued on . . . appeal . . . are deemed by us to be abandoned." United States v. Burroughs, 650 F.2d 595, 598 (5th Cir.), cert. denied, 454 U.S. 1037, 102 S.Ct. 580, 70 L.Ed.2d 483 (1981).'" Brownlee v. State, 666 So.2d 91, 93 (Ala.Cr.App. 1995), quoting Burks v. State, 600 So.2d 374, 380 (Ala.Cr.App. 1991).
 IV.
After reviewing the overwhelming evidence against Lawhorn, including his confession, we believe that while his trial and appellate counsel may have made certain strategic choices that Lawhorn now questions, counsel did not render ineffective assistance. An accused is entitled "`not [to] errorless counsel, and not [to] counsel judged ineffective by hindsight, but [to] counsel reasonably likely to render and rendering reasonably effective assistance.'" Thompson v. State, 615 So.2d 129, 134
(Ala.Cr.App. 1992), cert. denied, 510 U.S. 976, 114 S.Ct. 467,126 L.Ed.2d 418 (1993), quoting Haggard v. Alabama, 550 F.2d 1019, 1022 (5th Cir. 1977). We find no merit to any of Lawhorn's allegations of ineffective assistance of counsel. Lawhorn has not shown "by a preponderance of the evidence the facts necessary to entitle [him] to relief" on this issue. Rule 32.3, Ala.R.Crim.P.
 V.
As noted by the trial court in its order denying Lawhorn's petition, several of Lawhorn's claims in his petition were precluded by Rule 32.2(a), Ala.R.Crim.P. This court has recognized that "[t]he procedural bars of Rule 32 apply with equal force to all cases, including those in which the death penalty has been imposed." Tarver, 629 So.2d at 19. See Horsley v. State, 675 So.2d 908 (Ala.Cr.App. 1996); and Grayson v. State,675 So.2d 516 (Ala.Cr.App. 1995), cert. denied, 519 U.S. 934,117 S.Ct. 309, 136 L.Ed.2d 225 (1996).
We find that the following claims in Lawhorn's petition are procedurally barred pursuant to Rules 32.2(a)(2) and (4), Ala.R.Crim.P., because they were raised and addressed at trial and/or on direct appeal:
1. Lawhorn's claim that the trial court failed to make any inquiry whatsoever into the prospective jurors' pro-death penalty bias. See Lawhorn v. State, 581 So.2d at 1165.
2. Lawhorn's claim that the trial court improperly denied Lawhorn's motion for a change of venue based on pretrial publicity. See Lawhorn v. State, 581 So.2d at 1164.
3. Lawhorn's claim that "improper juror inclusion" denied his right to a fair trial by an impartial jury. See Lawhorn v. State, 581 So.2d at 1165.
4. Lawhorn's claim that the trial court err in admitting irrelevant and unfairly prejudicial evidence violated his constitutional rights. See Lawhorn v. State, 581 So.2d at 1173.
5. Lawhorn's claim that the trial court erred in its admission of allegedly illegally obtained statements made by him on April 7, 1988. See Lawhorn v. State, 581 So.2d at 1166.
6. Lawhorn's claim that the prosecution's improper conduct and arguments before and during the guilt-innocence phase deprived him of a fundamentally fair trial. See Lawhorn v. State, 581 So.2d at 1172.
7. Lawhorn's claim that the trial court erred in its jury charge on the issue *Page 995 
whether the capital offense was especially heinous, atrocious, or cruel when compared to other capital offenses. See Lawhorn v. State, 581 So.2d at 1175.
8. Lawhorn's claim that the prosecution's improper conduct in argument and during the penalty phase deprived him of a fair trial. See Lawhorn v. State, 581 So.2d at 1168.
9. Lawhorn's claim that the trial court erroneously allowed the prosecution to make a second closing argument after defense counsel waived closing argument at the penalty phase in violation of Alabama law. See Lawhorn v. State, 581 So.2d at 1173.
10. Lawhorn's claim that the trial court's instruction that the jury must find the aggravating circumstance set out in Ala. Code §13A-5-49(6) made the death sentence mandatory, thereby improperly shifting the burden of proof to him in violation of Alabama law and the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution. See Lawhorn v. State, 581 So.2d at 1170.
11. Lawhorn's claim that the parole officer's interview with him deprived him of his rights against self-incrimination and was conducted in violation of his Fifth and Fourteenth Amendment Rights under the United States Constitution and his rights under Article I, § 6, of the Alabama Constitution. See Lawhorn v. State, 581 So.2d at 1171.
12. Lawhorn's claim that the trial court improperly received and considered a presentence investigation report replete with objectionable and prejudicial assertions of opinion and fact. See Lawhorn v. State, 581 So.2d at 1171.
13. Lawhorn's claim that the trial court's instruction to the jury regarding the aggravating circumstance that the murder was "especially heinous, atrocious, or cruel" was vague, unreliable, and overly broad. See Lawhorn v. State, 581 So.2d at 1174.
14. Lawhorn's claim that the Alabama Supreme Court erred in finding that the jury's consideration of an improperly defined aggravating circumstance was harmless error. See Ex parte Lawhorn, 581 So.2d at 1181.
15. Lawhorn's claim that the death penalty is excessive and disproportionate punishment given the particular facts and circumstances of this case. See Lawhorn v. State, 581 So.2d at 1178.
16. Lawhorn's claim that the appellate courts violated his rights by failing to detect plain error in the record below. See Ex parte Lawhorn, 581 So.2d at 1181.
17. Lawhorn's claim that the cumulative effect of all the alleged errors constitutes a denial of his rights under the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution and the laws and Constitution of the Alabama. See Lawhorn v. State, 581 So.2d at 1178; Ex parte Lawhorn, 581 So.2d at 1181.
We find that the following claims in Lawhorn's petition are procedurally barred pursuant to Rules 32.2(a)(3) and (5), Ala.R.Crim.P., because they could have been raised at trial and on direct appeal, but were not:
1. Lawhorn's claim that the court erred by not conducting individual voir dire of the prospective jurors because he says each juror was influenced by the responses of every other juror to questions asked on voir dire.
2. Lawhorn's claim that the prosecution deprived him of access to evidence that the prosecution was required by law to make available to the defense. Specifically, he argues that the prosecution failed to preserve a sample of blood from his pants and sneakers.
3. Lawhorn's claim that there was insufficient evidence to permit a rational trier of fact to conclude beyond a reasonable doubt that Lawhorn committed the capital offense of murder for hire. *Page 996 
4. Lawhorn's claim that the trial court improperly limited the jury's consideration of mitigating circumstances.
5. Lawhorn's claim that the trial court did not properly instruct the jury on the process of weighing aggravating and mitigating circumstances.
6. Lawhorn's claim that Alabama's capital sentencing scheme is impermissibly vague and arbitrary because, he says, it does not provide a clear, detailed, and rationally reviewable standard for determining whether the aggravating circumstances outweigh the mitigating circumstances.
7. Lawhorn's claim that Alabama's capital sentencing scheme is invalid because it leaves both the jury and the judge without a sense of full and ultimate responsibility for determining whether a capital defendant should live or die.
8. Lawhorn's claim that he was denied his right of allocution at the penalty phase.
9. Lawhorn's claim that Alabama's practice of electrocuting human beings constitutes cruel and unusual punishment.
We find that the following claims in Lawhorn's petition are procedurally barred pursuant to Rules 32.2(a)(3) and (4), Ala.R.Crim.P., because they could have been but were not raised at trial, but were addressed on appeal:
1. Lawhorn's claim that he was subjected to unconstitutional delay in securing a judicial determination of probable cause for his warrantless arrest. See Ex parte Lawhorn, 581 So.2d at 1181.
2. Lawhorn's claim that his arrest was unlawful and that it violated his rights under Alabama law and the Fourth, Eighth, and Fourteenth Amendments to the United States Constitution, and, therefore, that confessions obtained as a result of that arrest should have been suppressed. See Ex parte Lawhorn, 581 So.2d 1180.
3. Lawhorn's claim that the trial court committed reversible error by failing to make an adequate determination of Lawhorn's capacity to commit the offense. See Ex parte Lawhorn, 581 So.2d at 1181.
4. Lawhorn's claim that he was deprived of a fair trial by an impartial jury through the prosecutor's allegedly discriminatory use of preemptory challenges. See Ex parte Lawhorn, 581 So.2d at 1181.
5. Lawhorn's claim that the statement of codefendant Maxine Walker was improperly admitted at Lawhorn's trial, in violation of his rights under Alabama law and the Sixth, Eighth, and Fourteenth Amendments to the United States Constitution. See Ex parte Lawhorn, 581 So.2d at 1181.
6. Lawhorn's claim that members of the prosecution team were improperly allowed to testify against him at trial, thereby rendering Lawhorn's trial and sentence fundamentally unfair. See Ex parte Lawhorn, 581 So.2d 1181.
7. Lawhorn's claim that the trial court's instructions to the jury on the state's burden of persuasion relieved the state from proving him guilty beyond a reasonable doubt. See Ex parte Lawhorn, 581 So.2d at 1180.
8. Lawhorn's claim that the trial court improperly failed to address or to consider information in the record relating to the existence of mitigating circumstances. See Lawhorn v. State, 581 So.2d at 1180.
We find that the following claims in Lawhorn's petition are procedurally barred pursuant to Rules 32.2(a)(4) and (5), Ala.R.Crim.P., because although they were not raised on appeal, they were addressed on appeal by either this court or the Alabama Supreme Court as part of its plain-error review on Lawhorn's direct appeal:
1. Lawhorn's claim that Alabama's capital sentencing scheme is invalid because it does not require that the jury or court be satisfied beyond a reasonable doubt that death is an appropriate penalty under the circumstances of the case. See Lawhorn, 581 So.2d at 1178; Ex parte Lawhorn, 581 So.2d at 1180. *Page 997 
2. Lawhorn's claim that the death penalty is an excessive and disproportionate sentence in the present case, as compared to other similar cases. See Lawhorn, 581 So.2d at 1178; Ex parte Lawhorn, 581 So.2d at 1180.
 VI.
As noted above, this court on direct appeal searched the entire transcript for error according to Rule 45A, Ala.R.App.P. Had this court found anything that would merit reversal, even if it was not raised on appeal, the judgment would have been reversed and this case remanded for a new trial. After evaluating the evidence presented at the evidentiary hearing on Lawhorn's Rule 32 petition, we conclude that Lawhorn received a fair trial and that the trial court correctly denied the petition.
AFFIRMED.
McMillan, Cobb, Baschab, and Fry, JJ., concur.
[1] Section 13A-5-40(a)(7) makes capital a "[m]urder done for a pecuniary or other valuable consideration or pursuant to a contract or for hire."
[2] We note that this opinion was supported by the testimony of Lawhorn's expert witness at the Rule 32 hearing.
[3] See Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69
(1986).
[4] See County of Riverside v. McLaughlin, 500 U.S. 44, 111 S.Ct. 1661,114 L.Ed.2d 49 (1991). Lawhorn contends that the delay in his probable cause hearing was unconstitutional and that his trial counsel should have alleged this violation in the trial court.
[5] We reject Lawhorn's argument that his trial counsel rendered ineffective assistance by failing to focus the court's attention on the "manner of the killing." (Appellant's brief, p. 57.) We clearly stated, "[I]n fact, appellant admitted, during the sentencing phase, that as the victim lay entangled in the underbrush and unable to talk, but gurgling, he repeatedly shot the victim and, at the time, did not care whether the victim died or not." Lawhorn, 581 So.2d at 1177. The manner in which the victim was killed was especially heinous, atrocious, or cruel.
[6] First, we note that on direct appeal we held that the presentence report was properly presented and that its review by the trial court was proper. Lawhorn v. State, 581 So.2d at 1171.
 *Page 62