# SUPREME COURT OF THE UNITED STATES

RICHARD F. ALLEN, COMMISSIONER, ALABAMA
DEPARTMENT OF CORRECTIONS, ET AL. *v.*
JAMES CHARLES LAWHORN

ON PETITION FOR WRIT OF CERTIORARI TO THE UNITED
STATES COURT OF APPEALS FOR THE ELEVENTH CIRCUIT

No. 10–24.   Decided December 13, 2010

The motion of respondent for leave to proceed *in forma pauperis* is granted. The petition for a writ of certiorari is denied.

JUSTICE SCALIA, with whom JUSTICE THOMAS and JUSTICE ALITO join, dissenting from denial of certiorari.

Respondent James Lawhorn was sentenced to death by an Alabama court in 1989. Nearly two decades later, the United States Court of Appeals for the Eleventh Circuit granted him habeas relief on the ground that his counsel had rendered ineffective assistance at the sentencing hearing by failing to make a closing argument. In my view that decision was patently wrong: The court had no basis in law for setting aside the state courts' judgment that respondent had failed to establish a probable effect of that failure upon the outcome. I dissent from the Court's decision not to grant certiorari and summarily reverse the Eleventh Circuit's judgment.

## I

In March 1988, Altion Maxine Walker offered to pay her nephews, James Lawhorn and his brother Mac Lawhorn, $100 in exchange for murdering her boyfriend, William Berry. The Lawhorns accepted. After they ambushed Berry, Mac Lawhorn shot him, causing him to fall. James Lawhorn (hereinafter Lawhorn) then heard Berry making "'gurgling noises'" and shot him repeatedly "'to make sure he was dead.'" 519 F. 3d 1272, 1278 (CA11 2008).

Lawhorn was arrested for the crime and made a full confession. An Alabama jury found him guilty of capital murder. During the sentencing phase, Lawhorn's lawyer gave an opening argument, detailing the mitigating factors that would be established by the forthcoming testimony. Lawhorn's mother, sister, junior high school principal, and juvenile probation officer then testified on the defendant's behalf. Lawhorn himself also gave a brief statement to the jury, saying that he knew his actions were wrong and asking them to "'please have mercy on me.'" *Id.,* at 1280. At the close of the testimony, Lawhorn's counsel waived his right to closing argument; his ensuing objection to the prosecutor's making closing argument was overruled.

The jury made a recommendation of death, which the trial judge accepted. The Alabama Court of Criminal Appeals and the Supreme Court of Alabama affirmed the conviction and sentence. See *Lawhorn* v. *State*, 581 So. 2d 1159 (1990); *Ex parte Lawhorn*, 581 So. 2d 1179 (1991). We denied Lawhorn's petition for certiorari. 502 U. S. 970 (1991).

Lawhorn moved in state court for postconviction relief. He contended, as relevant here, that his lawyer's failure to give a closing argument in the sentencing phase constituted ineffective assistance of counsel under *Strickland* v. *Washington*, 466 U. S. 668 (1984). The trial court—the same court that had imposed the death sentence—denied the motion, on dual grounds that counsel's waiver of closing argument was a reasonable strategic decision, and that Lawhorn had failed to establish prejudice from the waiver. The Alabama Court of Criminal Appeals affirmed, *Lawhorn* v. *State*, 756 So. 2d 971 (1999). The Supreme Court of Alabama denied certiorari, No. 1982018 (Jan. 7, 2000), as did we, 531 U. S. 835 (2000).

Lawhorn then sought federal habeas relief. The District Court set aside both the conviction and the sentence.

*Lawhorn* v. *Haley*, 323 F. Supp. 2d 1158 (ND Ala. 2004). A panel of the Eleventh Circuit reversed with regard to the conviction, but affirmed with regard to the sentence. 519 F. 3d 1272. With regard to the latter, it sustained the District Court's finding that counsel's failure to give a closing argument was not a reasonable strategic decision, but rested on the erroneous belief that that would preclude closing argument by the prosecutor; and it sustained the District Court's conclusion that Lawhorn had been prejudiced by counsel's failure. The Eleventh Circuit denied the State's petitions for panel rehearing, No. 04–11711 (Mar. 31, 2010) *(per curiam),* App. to Pet. for Cert. 197a, and rehearing en banc, No. 04–11711 (Mar. 29, 2010), App. to Pet. for Cert. 220a–221a—after, I may note, an unexplained delay of over two years.

The State now petitions for certiorari. It does not challenge the Eleventh Circuit's conclusion that counsel's performance was deficient; it contends only that it was error to find that Lawhorn had established prejudice.

## II

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) provides in part as follows:

> "An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim . . . resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U. S. C. §2254(d)(1).

The State contends that the Eleventh Circuit erroneously considered the claim of prejudice *de novo,* rather than granting the deference mandated by AEDPA to the

state court's conclusion. Lawhorn does not deny that the Eleventh Circuit was required to grant deference, but contends that it did so. He acknowledges that in its discussion of the prejudice claim the Court of Appeals did not so much as cite AEDPA, but argues that "[t]his Court has never required any magical incantation of the terms of §2254(d)(1) in habeas corpus appeals" and that "[i]t is unreasonable as a matter of law to suggest that [the Eleventh] Circuit . . . is unfamiliar with or did not apply §2254(d)." Brief in Opposition 25–26.

If indeed Lawhorn is correct that the Eleventh Circuit attempted to apply §2254(d), it is clear that the attempt failed. As we have repeatedly explained, AEDPA imposes a "highly deferential standard for evaluating state-court rulings, and demands that state-court decisions be given the benefit of the doubt." *Renico* v. *Lett*, 559 U. S. ___, ___ (2010) (slip op., at 5) (citation and internal quotation marks omitted); accord, *Knowles* v. *Mirzayance*, 556 U. S. ___, ___ (2009) (slip op., at 10–11); *Schriro* v. *Landrigan*, 550 U. S. 465, 473 (2007); *Woodford* v. *Visciotti*, 537 U. S. 19, 24–25 (2002) *(per curiam); Williams* v. *Taylor*, 529 U. S. 362, 410–411 (2000). The doubt of which the Alabama Court of Criminal Appeals was to be given the benefit was particularly expansive in this case, since none of our cases has ever considered whether the failure to give a closing argument can be considered prejudicial under *Strickland.* Accordingly, only the standard for ineffective assistance set forth in *Strickland* itself could be applied; and as we have explained, "because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." *Knowles, supra,* at ___ (slip op., at 11). "[T]he more general the rule at issue—and thus the greater the potential for reasoned disagreement among fair-minded judges—the more leeway state courts have in reaching outcomes in case-by-case determina-

tions." *Renico*, *supra,* at \_\_\_ (slip op., at 8–9) (internal quotation marks omitted).

*Strickland* requires the defendant to show that there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." 466 U. S., at 694. The trial judge, who witnessed the proceedings and imposed Lawhorn's death sentence, concluded that Lawhorn had not made that showing. He explained that "[t]rial counsel did not present a complicated case in mitigation that needed to be explained to the jury"; that counsel had "presented Lawhorn's family background and pleas for mercy in mitigation," making closing argument on those matters unnecessary; and that "this was a horrible crime and the jury would not have been swayed by a closing argument considering the facts of this case." 756 So. 2d, at 987 (internal quotation marks omitted). The Alabama Court of Criminal Appeals quoted those findings and agreed that "in this situation with these particular facts, closing argument by defense counsel would have had little impact." *Ibid.*

This was not an unreasonable application of *Strickland*. Counsel's closing statement is rhetorical argument, not evidence. Reconstructing what that argument might have been, and how the jury might have reacted to it—a jury that had already heard opening argument and a procession of mitigation witnesses—is an exercise in guesswork. The Eleventh Circuit's reasons for finding prejudice are unpersuasive.

The Eleventh Circuit observed that one juror had voted to recommend life; and because a vote of 10 to 2 was required to recommend a death sentence, counsel "needed only to convince two other jurors to alter the outcome of the proceedings." 519 F. 3d, at 1297. (Apart from the fact that the jury's recommendation is in any event not binding on the sentencing judge, a 9–to–3 vote would not have produced recommendation of a life sentence, but would

have resulted in a mistrial and empanelling of a new
sentencing jury. See Ala. Code §§13A–5–46(f), (g), 13A–5–
47(e) (2006).) But it cannot be deduced from the existence
of a single dissenting juror that a closing argument would
have persuaded other jurors not to recommend a death
sentence. That there was one juror against a recommen-
dation of death does not establish that this was a close
mitigation case, much less that a closing argument would
have made the difference for other jurors.

The Eleventh Circuit provided several examples of
statements Lawhorn's counsel could have made. Closing
argument might "have refreshed the jury's memory of the
evidence of substantial domination presented during the
guilt phase." 519 F. 3d, at 1297. Counsel "could have . . .
argued for the mitigation of Lawhorn's age at the time of
the offense and his troubled family background," and could
have asked the jury for mercy. *Ibid.* But merely identify-
ing statements counsel could have made (there will *always*
be statements counsel could have made) does not establish
what *Strickland* requires: that those statements would
probably have made a difference. All the facts relevant to
the Eleventh Circuit's hypothesized closing argument had
already come out in the sentencing phase. And a plea for
mercy had been made in the sentencing phase by Lawhorn
himself.

The hypothesized closing argument falls even further
short of establishing what AEDPA requires: that it was
not merely incorrect but *unreasonable* for the Alabama
courts to conclude that probability of a different outcome
had not been shown. It was, to the contrary, well within
the bounds of reasonable judgment for the Alabama Court
of Criminal Appeals to conclude that "in this situation
with these particular facts, closing argument by defense
counsel would have had little impact." 756 So. 2d, at 987.

In sum, the outcome imposed upon the Alabama courts
by the Eleventh Circuit is not remotely required by clearly
established Supreme Court precedent.

SCALIA, J., dissenting

\*　　\*　　\*

It has been over 21 years since Lawhorn was sentenced to death. Alabama should be not barred from carrying out its judgment based on a federal court's lawless speculation. I would not dissent from denial of certiorari if what happened here were an isolated judicial error. It is not. With distressing frequency, especially in capital cases such as this, federal judges refuse to be governed by Congress's command that state criminal judgments must not be revised by federal courts unless they are "contrary to, or involv[e] an unreasonable application of, *clearly established Federal law, as determined by the Supreme Court of the United States*," 28 U. S. C. §2254(d)(1) (emphasis added). We invite continued lawlessness when we permit a patently improper interference with state justice such as that which occurred in this case to stand. We should grant Alabama's petition for certiorari and summarily reverse the Eleventh Circuit's judgment.